ANDERSON v. PATTEN, Postmaster.

(District Court, S. D. New York.    November 30, 1917.)

1. POST OFFICE ⊜⇒14—NONMAILABLE MATTER—OBSCENE LITERATURE.
    In a suit to restrain defendant, a postmaster, from denying the use of the mails to a publication on the ground that it violated Criminal Code (Act March 4, 1909, c. 321) § 211, 35 Stat. 1129 (Comp. St. 1916, § 10381), declaring that every obscene, lewd, or lascivious, and filthy book or other publication is nonmailable matter, evidence *held* to warrant exclusion showing that the excluded publication contained stories and articles salacious in their character and having a tendency to incite lust, even though a mere description of irregular things in relation to sex may not fall within the statute.

2. POST OFFICE ⊜⇒14—NONMAILABLE MATTER—EXCLUSION.
    The exclusion of publications from the mails by the Postmaster General as obscene, lewd, or lascivious, under Criminal Code, § 211, is not a question reviewable by the court, except in cases where the judgment of the Postmaster General has been wholly arbitrary and without foundation, for his discretion must be regarded as conclusive, unless clearly wrong.

In Equity. Suit by Margaret C. Anderson against Thomas C. Patten, Postmaster of the City of New York. On motion to restrain the postmaster from denying use of mails to the October issue of the Little Review. Motion denied.

John Quinn, of New York City, for complainant.
Francis G. Caffey, U. S. Atty., of New York City (Joseph A. Burdeau, Asst. U. S. Atty., of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. [1] This is a motion to restrain the postmaster of New York from denying the use of the mails to the October issue of the Little Review. This publication was suppressed upon the advice of the solicitor of the Post Office Department on the ground that it was nonmailable under section 211 of the

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

United States Criminal Code (Comp. St. 1916, § 10381), which provides:

"Every obscene, lewd, or lascivious, and every filthy book, pamphlet * * * writing * * * or other publication of an indecent character * * * is hereby declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier."

The publication which is particularly objected to by the Postal Authorities is a short story about a soldier in the British army, who reflects upon the topsy-turvy condition of the world and feels that gigantic forces, which he is pleased to call those of nature, are arrayed against the individual—forces that in most cases will overpower him. He regards his own destruction in the present European conflict as more than likely, and under all these conditions feels at war with the world. With satirical satisfaction he seduces a young girl, and disregards her appeals when she becomes a mother. In his revolt at the confusion and injustice of the war, he feels justification at having wreaked his will and obtained his satisfaction, thus, as he says, outwitting nature.

It may be urged that this story points various morals. One may say it shows the wickedness of selfishness and indulgence. Another may argue that it shows the degradation of camp life and the demoralizing character of war. It naturally causes a reflecting mind to balance the heroism and self-abnegation that always shines forth in war with the demoralization that also inevitably accompanies it. The very old question suggests itself as to the ultimate values of war.

But no outline of the story conveys its full import. The young girl and the relations of the man with her are described with a degree of detail that does not appear necessary to teach the desired lesson, whatever it may be, or to tell a story which would possess artistic merit or arouse any worthy emotion. On the contrary, it is at least reasonably arguable, I think, that the details of the sex relations are set forth to attract readers to the story because of their salacious character. I am, of course, aware that mere description of irregular things in relation to sex may not fall within the statute. Such was the case when a similar New York statute was discussed by the Court of Appeals of that state in People v. Eastman, 188 N. Y. 478, 81 N. E. 459, 11 Ann. Cas. 302. Here, however, there is ground for holding that portions of the short story in question have a tendency to excite lust, and, if this is so, it falls within the prohibition of the statute. People v. Muller, 96 N. Y. 408, 48 Am. Rep. 635; Swearingen v. United States, 161 U. S. 446, 16 Sup. Ct. 562, 40 L. Ed. 765.

There is also in this publication a translation of a document stated to have been found on a soldier. This document is supposed to have emanated from a German committee on increase of population. It bears the serial number 138,756, is a kind of commission containing instructions to the addressee to beget children of all women available in a designated district. The witticism indulged in in this document, promising promotion in case the addressee takes on a second district, as well as the general style of the publication, is an indication that it is not genuine, and would not appear to be so to an intelligent reader.

I think the Department's position that its tendency is to corrupt is not unreasonable. I can hardly regard it as a publication giving information, for it seems prima facie designed to attract readers because the subject-matter and the treatment are salacious, and not because it gives information, or in design or in fact teaches the reader how dangerous or demoralizing is the Teutonic foe.

[2] The whole subject involved in this case is beset with difficulties, and the duty of the Postmaster General in administering the act is a most delicate one. Few would, I suppose, doubt that some prevention of the mailing of lewd publications is desirable, and yet no field of administration requires better judgment or more circumspection to avoid interference with a justifiable freedom of expression and literary development. I have little doubt that numerous really great writings would come under the ban, if tests that are frequently current were applied, and these approved publications doubtless at times escape only because they come within the term "classics," which means, for the purpose of the application of the statute, that they are ordinarily immune from interference, because they have the sanction of age and fame, and usually appeal to a comparatively limited number of readers. It is very easy, by a narrow and prudish construction of the statute, to suppress literature of permanent merit. These considerations of administration, however, are not for the courts, except in cases where the judgment of the Postmaster General has been wholly arbitrary and without foundation.

While it has been urged with unusual ingenuity and ability that nothing under consideration can have the tendency denounced by the statute, I do not think the complainant has made out a case for interfering with the discretion lodged in the Postmaster General, whose "decision must be regarded as conclusive by the courts, unless it appears that it was clearly wrong." Masses v. Patten, 246 Fed. 24, —— C. C. A. ——; Smith v. Hitchcock, 226 U. S. 58, 33 Sup. Ct. 6, 57 L. Ed. 119.

The motion is denied.