William GLANZMAN, doing business as Bowery Enterprises, Plaintiff,

v.

Hon. Robert K. CHRISTENBERRY, as Postmaster, New York, New York, Defendant.

United States District Court
S. D. New York.
Dec. 24, 1958.

See, also, 143 F.Supp. 243.

David T. Berman, Brooklyn, for plaintiff.

Arthur H. Christy, U. S. Atty., for the S. D. New York, New York City, for defendant.

DIMOCK, District Judge.

This is an action in which plaintiff seeks a mandatory injunction directing the Postmaster at New York to accept for mailing a certain lot of circulars issued by plaintiff. Plaintiff now seeks a preliminary injunction in the same terms. The Postmaster has been temporarily restrained from destroying the circulars.

The Postmaster has refused to accept and dispatch the circulars pursuant to a decision of the Judicial Officer of the Post Office Department that the mailing of the circulars would constitute a violation of section 1461 of Title 18 U.S. Code which deals with the mailability of obscene matter.

■ Plaintiff makes the point that, even if the mailing of the circulars would constitute a criminal offense under section 1461, the Post Office Department has no right to bar them from the mails. Second, he says, that the circulars are not of such a character that their mailing would work a violation of the obscenity statute and, finally, that their exclusion from the mails is a violation of his constitutional rights. The last two contentions can be considered together because it is settled that there is no constitutional right to disseminate obscene matter. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

■ The contention that the Post Office Department is powerless to enforce the criminal statute was answered by Judge Ryan of this court in Monart, Inc. v. Christenberry, 168 F.Supp 654. He pointed out that sections 22 and 369 of Title 5 U.S.Code, in substance, grant to the executive head of each department of the Government authority to issue and promulgate regulations necessary to properly carry on the business of his department, the first named section having reference to the departments in general and the second to the Post Office Department. He cited the regulations of the Post Office Department, Title 39 of the Code of Federal Regulations, sections 203.1 to 203.14 contained in 23 Fed.Reg. pp. 2798 et seq., effective April 26, 1958, providing for hearings and determinations on claims of non-mailability under section 1461 of Title 18 U.S.Code. He pointed out that the material had been held to be non-mailable pursuant to procedure outlined in these regulations and said that the Post Office Department was not required to sit idly by and lend itself as an instrument for the commission of a crime when matter proscribed as nonmailable was offered for mailing. He held that there was an obligation imposed on the Postmaster not to permit such matter to be conveyed through the mail once it had been determined to be nonmailable. I heartily concur in Judge Ryan's decision and I follow it in rejecting plaintiff's contention that the Post Office Department cannot close the postal service to material the mailing of which would be a violation of section 1461.

■ The question remains whether the judicial officer of the Post Office Department was correct in holding that the mailing of the circulars would constitute a violation of section 1461. In reviewing determinations under section

1461 the courts must follow the usual rule that an administrative determination must stand unless it appears that it was clearly wrong. Anderson v. Patten, D.C.S.D.N.Y., 247 F. 382, where Judge Augustus Hand dealt with a predecessor of section 1461. See also Roth v. Goldman, 2 Cir., 172 F.2d 788, 789, certiorari denied 337 U.S. 938, 69 S.Ct. 1514, 93 L. Ed. 1743.

Judge Ryan's decision in the Monart case above referred to affords a perfect precedent for rejection of plaintiff's contention. In that case, as here, photographs, slides and motion picture films were advertised by circulars containing reproductions of the pictures which were offered for sale. The subjects of the pictures which were reproduced were nude and semi-nude women and in each case the name of the model for each picture was given. In both cases the pictures in the circulars were of the same character and in many instances the same women served as models for the photograps offered by each plaintiff. The similarity was not a mere coincidence since plaintiff in the instant action is the president of Monart, Inc., plaintiff in the other action.

■■■ Plaintiff in this action relies upon the decision of the United States Supreme Court in Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352, which reversed a decision of the Court of Appeals for the District of Columbia, 101 U.S.App.D.C. 358, 249 F.2d 114, upholding a ruling of non-mailability by the Post Office Department. The reversal by the Supreme Court was without opinion but proceeded upon the citation of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. That case at page 488 of 354 U.S. at page 1311, of 77 S.Ct. stated, "It is therefore vital that the standards for judging obscenity safeguard the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest." Counsel for plaintiff has submitted the material which the Supreme Court thus held to be protected by the Constitution in the Sunshine Book case. The only similarity between the material in the Sunshine Book case and that here involved is that each features nakedness. The Sunshine Book Company publications were devoted to the cult of nudism and the pictures left nothing to the imagination as far as the human body was concerned. Yet the Supreme Court held that they were not obscene, presumably because they did not appeal to prurient interest. Here, however, there is hardly a picture which is not provocative of the sexual instinct. The pictures where the models are partially clothed, as for instance with a pair of stockings or gloves, are still more provocative than those of complete nudity. I find that most of them treat sex in a manner appealing to prurient interest within the meaning of the rule of the Roth case and are obscene within the meaning of section 1461. This is so clear that I find it unnecessary to seek support in the rule that an administrative determination must stand unless clearly wrong.

A question is raised by the fact that the Judicial Officer, in holding the material unmailable, said that the circulars gave "the leer that promises obscenity", citing United States v. Hornick, 3 Cir., 229 F.2d 120.

That was a case where the defendants had been convicted of mailing advertisements and a notice giving information in violation of section 1461 where and how obscene matter could be obtained. The material offered photographs which would bring out " 'every Charm of the Female Form' " in the " 'Sexiest of Poses' ". It was stated " 'These cards cannot be sent through the mail—So this should give you an idea of their nature and what we are talking about! 'Nuff said?' " The court held that it was unnecessary that there be proof that the material was actually obscene saying, 229 F.2d at page 121, that the whole tone of the advertisements gave "the leer the promises the customer some obscene pictures."

It cannot be said that the circulars here promised the customer anything

488

more obscene than the samples which they reproduced. Thus the Hornick case is not apposite. Nevertheless, since the mailing of the reproductions in the circulars would be a clear violation of section 1461 the circulars were properly held non-mailable. Section 1461 not only makes unlawful the mailing of advertisements giving information where obscene matter may be obtained but also the mailing of obscene matter itself.

The motion for a preliminary injunction must be denied and the temporary restraining order vacated.

Settle order on notice.