[Crim. No. 1193. Fourth Dist. Jan. 8, 1959.]

THE PEOPLE, Respondent, v. SHELBY LOEPER, Appellant.

Robert P. Lawton for Appellant.

Edmund G. Brown, Attorney General, and Arthur C. deGoede, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant-appellant Loeper, together with one Vincent Quintero, were charged in an amended grand jury indictment that on December 9, 1957, they did feloniously sell a narcotic (marijuana) in violation of Health and Safety Code, section 11500. Appellant was charged with two prior convictions of felonies (burglary and escape from state prison). He pleaded not guilty to the charge and later admitted the prior convictions. A motion for a separate trial was denied. The jury returned a verdict of guilty as to Loeper and not guilty as to Quintero. Appellant's motion for a new trial was denied.

The questions raised on this appeal are (1) whether it was prejudicial error for the trial court to fail to give an instruction on its own motion, that knowledge of the narcotic character of the substance allegedly sold, was an essential ingredient of the offense charged; (2) was it prejudicial error to instruct the jury on the subject of confessions? and (3) was it prejudicial error to admit into evidence offenses pertaining to defendant Quintero other than the offense charged?

A special deputy sheriff, without pay (Hobbs, otherwise regularly employed as a machinist) acted as an undercover investigator. He met appellant's codefendant Quintero at a parking lot in La Habra on December 8th, 1957, about 6 p. m. There, other persons were present, including appellant Loeper. Quintero asked Hobbs if he wanted to buy a "pound" or a "tin." (A tin is equivalent to one tobacco can full of marijuana). Hobbs agreed to buy a "tin" for $15, but wanted to see "Dick" (a fictitious person) to see if he would want to buy one. Quintero inquired when he would return and Hobbs replied "about midnight." Quintero and Hobbs then returned to the lot, and at Hobbs' suggestion they went to see "Dick" to show it to him. Both left in separate cars and

parked in front of a bar. There they walked over to a black Buick car where appellant Loeper was seated. Quintero tapped on the windshield and appellant rolled down the window. Quintero told appellant "This is the guy," and appellant then asked Hobbs if he would buy a tin and he said he would if Dick liked it but he wanted Dick to see it over in Carbon Canyon, about six miles away. Appellant said he would have to go down by the tracks to get it. Appellant walked down the tracks and returned in about five minutes, got in appellant's car, and Quintero drove his own car to the spot. En route, appellant stated to Hobbs that he was going to quit "pushing weed" (marijuana), and start "pushing hard stuff" (heroin). They parked in a lot by a café and Quintero parked near-by. Hobbs told appellant he would pay for and take one "tin" but he would have to show it to Dick and then return in about 20 minutes. Appellant Loeper held out three brown sacks and told Hobbs to take his pick. He said a "lid" (tin) would cost $12.50. Hobbs took one bag and paid appellant $12.50. Hobbs then walked to his residence, telephoned the sheriff, and related the facts. About 20 minutes later Hobbs returned to the car and appellant and Quintero were seated in it. Hobbs told them that the marijuana was pretty "stemmy" and it was a "short tin" but they would take it anyway. He said Dick wanted a pound and wanted to know what that amount would cost. Appellant replied he would have to see another fellow about that much. Quintero was to let Hobbs know. Defendants left and their arrest followed. The lot Hobbs bought proved to be marijuana.

Appellant testified he was there at the parking lot on December 8th at the time but did not talk to Hobbs; that Hobbs and Quintero did have a conversation which he did not hear; that when Hobbs left Quintero did come over to him and said Hobbs wanted to buy some narcotics but appellant did not offer to obtain it for him; that he was asleep in his car in front of the bar when Quintero awakened him by tapping on the windshield; that Hobbs was there; that he and Hobbs drove to the canyon to see Dick; that Hobbs then left for a few minutes, returned and talked to Quintero, as though he "was mad about something" and they drove away. He denied ever selling any marijuana to Hobbs and claimed he did not walk down the tracks to obtain marijuana as indicated by Hobbs.

The attorney general concedes that section 11500 of the Health and Safety Code requires a knowledge of the narcotic

character of the substance in question. The jury was instructed that "To constitute criminal intent it is not necessary that there should exist an intent to violate the law or to do a wrong. Criminal intent exists whenever a person intentionally does that which the law declares to be a crime, even though he may not know that he is committing a crime or that his act is wrong." It is claimed that this general instruction is proper in alleging crimes where specific intent follows the unlawful act but not in charged narcotic offenses. However, this instruction was followed by another which read in part: "An essential element of the crime of which the defendant is accused is intent . . . . The intent to do the forbidden thing constitutes the criminal intent. The law requires that to be guilty of crime, one must intend the conduct that fits the description of the crime and must engage in that conduct *knowingly* and wilfully." (Italics ours.) The offense charged here was that defendant did wilfully, unlawfully and feloniously sell a narcotic, to wit, marijuana. ▮ In *People* v. *Odom,* 19 Cal.App.2d 641, 646 [66 P.2d 206], it was said: "An information which charges that a person 'wilfully and unlawfully' performed an act is equivalent to alleging that he *knowingly* did so, and thus supplies the element of knowledge of the unlawful act where that element is necessary to be alleged in the pleading," and "To do a thing wilfully *is to do it knowingly.*" (Citing *People* v. *Swiggy,* 69 Cal.App. 574, 581 [232 P. 174] ; 4 Words and Phrases [2d Ser.] p. 1304; and Pen. Code, § 7, subds. 1 and 5.) See also 23 Words and Phrases (permanent ed.) p. 572. ▮ From the instruction given, it clearly appears that before the jury would be authorized to find defendant guilty of the charge, he must have knowledge that it was a narcotic. The appellant's defense was not that his innocence was predicated upon lack of knowledge that it was a narcotic, but he claimed he made no sale to Hobbs under any circumstances. No instruction on this subject was proffered by appellant, as was done in *People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40], relied upon by appellant. Even though such an instruction was not offered, it was argued that it was the duty of the court, on its own motion, to give such an instruction. Appellant relies upon *People* v. *Putnam,* 20 Cal. 2d 885, 890 [129 P.2d 367], involving sex offenses under Penal Code, section 288. In such cases it was held that it was the duty of the court to give, on its own motion, certain cautionary instructions, because of the nature of the charge. The instant

case involves the sale of a narcotic and is thus differentiated. Had appellant offered such an instruction, which was refused, and there were no other instructions given on the subject, a different question might here arise. When the jury found that a sale was made by appellant, under the circumstances related, the transaction would necessarily imply knowledge by appellant of the narcotic nature of the substance sold. (*People* v. *Sanders*, 163 Cal.App.2d 132, 134-135 [328 P.2d 825].) In effect the jury was told that if appellant sold a substance without the knowledge that it was a narcotic he could not be convicted. We are convinced that the jury was not misled by the instructions given and that no prejudicial error resulted. (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].)

The court gave an instruction to the effect that "Evidence has been received in this case tending to show that on an occasion other than this trial the defendant Quintero himself made a statement tending to prove his guilt of the alleged crime for which he is on trial," and that "A statement thus made . . . may be either a confession or an admission." The court then followed this statement with a definition of confession and of an admission. It was followed by an instruction that the mere fact that the court had admitted into evidence the alleged confession did not bind the jury to accept the court's conclusion, but the jury, before it considered it, must conclude that it was a voluntary confession, but that this rule did not apply to an admission.

The contention is that the court instructed the jury there was in fact a confession in the case to be considered by the jury when in fact no confession of either defendant existed. Apparently there was a tape recording made of certain statements attributed to defendant Quintero, out of the presence of appellant. During the trial there was an unsuccessful attempt by the prosecution to admit this tape recording in evidence as to Quintero. The trial judge believed that certain statements made therein by Quintero involved this appellant and in fairness to him felt that an instruction to the jury not to consider those statements as to this appellant would not be entirely effective, and if admitted, might prejudice the rights of appellant. In the presence of the jury the prosecution referred to the recording as a *confession*. Quintero, on cross-examination, was questioned as to whether or not he made certain statements therein. (Apparently for the purpose of impeaching his present testimony). It appears that appellant's

counsel first referred to the recording as a "supposed admission or confession by Mr. Quintero." No objections were made at the time, to the district attorney's reference to it as a confession. Later, when counsel for Quintero objected to the use of the word "confession," the district attorney withdrew the remark and apologized for his "slip." The court especially instructed the jury to disregard the reference and told the jurors they would be the judge as to the nature of its contents. The tape recording was not in evidence and is not before us. There is no indication that the jury inferred that either Quintero or appellant therein confessed to this charge.

On rebuttal the prosecution placed the officer on the witness stand and apparently, after refreshing his memory from the tape recording, he testified that Quintero did make certain statements which Quintero denied he made during his cross-examination by the prosecutor. Complaint is now made of this procedure, claiming that the prosecution was trying to get before the jury the alleged statements which the court had previously rejected as inadmissible, citing *People* v. *Rodriguez,* 58 Cal.App.2d 415 [136 P.2d 626]. The officer's recollection as to the statements made by Quintero were admissible against him, at least for the purpose of impeachment, and the trial court limited their application to this purpose. The trial judge was more than fair to appellant in rejecting the admission of the tape recording into evidence as to Quintero so that it would not operate to the detriment of appellant. No prejudical error appears in this respect.

Lastly, appellant complains of evidence of two separate sales of marijuana by Quintero to Hobbs on December 7th (five marijuana cigarettes in evidence), and on December 10th (four such cigarettes in evidence). The charged sale in the instant case was on December 9th. Appellant did not object to evidence of the sale to Quintero on December 7th. The defendants objected to the introduction of the sale on December 10th, and the court sustained the objection by this appellant and the jury was instructed that evidence of the sales of December 7 and December 10 was not admitted as to appellant but could only be considered as against Quintero. Evidence of other sales had been held admissible against that defendant who sold it, to prove a material fact, or when the question of that defendant's knowledge or familiarity with the substance sold becomes involved, or for the purpose of showing motive, scheme, plan, or system. (*People* v. *Bean,*

149 Cal.App.2d 299 [308 P.2d 27]; *People* v. *Freytas*, 157 Cal.App.2d 706 [321 P.2d 782]; *People* v. *Sanders*, 163 Cal. App.2d 132 [328 P.2d 825].) The admission of such offenses generally depends upon the factual situation of the particular case. Since the court instructed the jury that this evidence was not admissible against appellant and did not involve him, no prejudicial error resulted from its admission. (*People* v. *Watson, supra.*)

Judgment and order denying a new trial affirmed.

Mussell, J., and Shepard, J., concurred.