**Sidney G. POSS, doing business as Camerart Studios, Plaintiff,**

**v.**

**Robert F. CHRISTENBERRY, Postmaster at New York, Defendant.**

United States District Court
S. D. New York.

Dec. 21, 1959.

Martin Benjamin, New York City, for plaintiff.

S. Hazard Gillespie, Jr., U. S. Atty., for the Southern Dist. of New York, New York City, for United States, Arthur V. Savage, Asst. U. S. Atty., New York City, of counsel.

BRYAN, District Judge.

Plaintiff, who does business as "Camerart Studios", sues for judgment declaring that an order of the Postmaster General issued against him under 39 U.S.C.A. § 259a is null and void and to restrain the New York Postmaster from enforcing such order. Plaintiff now moves for a preliminary injunction restraining the New York Postmaster from "interfering with the mail addressed to and from plaintiff" pending the final determination of the action. Defendant Postmaster cross-moves for summary judgment, pursuant to Rule 56, F.R. Civ.P., 28 U.S.C.A., upon the complaint and the record of the administrative proceeding before the Post Office Department.

In April of this year the general counsel of the Post Office commenced an administrative proceeding against the plaintiff by the service of an administrative "letter complaint" upon "Camerart". The complaint alleged that Camerart Studios was violating 39 U.S.C.A. § 259a [1] by "depositing * * * in the

---

1. The relevant portions of Section 259a provide: "Upon evidence satisfactory to the Postmaster General that any person * * * is obtaining, or attempting to obtain, remittances of money * * * through the mails for any obscene * * matter * * * or is depositing or is causing to be deposited in the United

mail, advertisements * * * giving information as to where, how and from whom obscene, lewd, lascivious and indecent * * * matter * * * may be obtained". On April 13, 1959 a temporary order was entered pursuant to § 259a which impounded mail addressed to Camerart for twenty days.

A hearing on the complaint was held before a Post Office Hearing Examiner on June 4, 1959. At the hearing the Department did not charge that the circular itself, or the matter which it contained, was obscene, or that the material to be sent to purchasers in response to the advertisement was obscene. The sole theory on which it proceeded was that the whole tone of the circular "gives the leer that promises the customer some obscene pictures" under the holding of United States v. Hornick, 3 Cir., 229 F.2d 120, 121.

The mailings were admitted by the respondent and the Department relied solely on the circular itself. None of the material to be sent in response to the solicitations made by the circular was before the Examiner, and there was no evidence as to what such material was other than the representations contained in the circular.

Respondent met the Department's charge with the argument that the circular on its face showed that the publisher had "an honest intent to sell art" and offered for sale merely an introduction to art plus cameras and viewing equipment. He contended that the circular could not be said to promise obscene material, directly, by implication or otherwise.

The only evidence which respondent offered was an advertisement on a page from the May 1959 issue of the U. S. Camera magazine which he claimed to be a technical publication of general circulation in the United States. The offer was made for the purpose of showing that material comparable to that in the circular was generally circulated and did not violate contemporary community standards. However, though a picture of a nude was shown as a mere incident to an advertisement for a photography school, the material was in no way comparable in tone or content to the circular involved here.

The proffered exhibit was excluded by the Hearing Examiner on the grounds that evidence of community standards was not relevant to the issues before him and on the further ground that the proffered matter had been taken out of context and thus, in any event, could shed no light on the issues.

At the conclusion of the hearing the Examiner rendered an oral decision finding that the circular under attack came within the purview of Section 259a since it came within the holding of United States v. Hornick, supra, and therefore gave information as to where and how obscene matter might be obtained.

On appeal the Judicial Officer of the Post Office Department affirmed the Examiner's decision and held that he had properly concluded "that the tests of the Hornick case were met and that a reasonable man reading the circular at issue would believe that he would be furnished obscene pictures by the respondent if he sent money requesting the matter advertised." The Judicial Officer also noted that similar matter had been held to violate the obscenity statutes in Monart, Inc. v. Christenberry, D.C.S.D.N.Y., 168 F.Supp. 654, and Glanzman v. Christenberry, D.C.S.D.N.Y., 175 F.Supp. 485.

States mails information as to where, how, or from whom the same may be obtained, the Postmaster General may—(a) instruct postmasters at any post office at which registered letters or any other letters or mail matter arrive directed to such person * * * to return all such mail matter to the postmaster at the post office at which it was original-ly mailed, with the word 'Unlawful' plainly written or stamped upon the outside thereof, and all such mail matter * * * shall be * * * returned to the senders thereof * * * and (b) forbid the payment by any postmaster to any such person * * * of any money order or postal note drawn to the order of such person * * * ".

The Postmaster General then entered a final order directing the New York Postmaster not to honor postal money orders drawn in favor of "Camerart Studios and its agents and representatives" and not to deliver mail addressed to such parties but to return it to the sender marked "Unlawful". This action followed.

Two questions are presented here. Is the defendant entitled to summary judgment? If not, is plaintiff entitled to a preliminary injunction? Different considerations apply to each of these questions and I shall deal with the summary judgment question first.

The circular in question advertises for sale motion pictures, stills and slides of female nudes to "help you develop your latent creative ability". It contains photographs of 16 completely nude ladies in various provocative and suggestive poses. The photographs prominently feature the breasts of the posed nudes so as to focus attention on them. Each "model" is given a rather showy and presumably glamorous name. There is an attempt to conceal one portion of the anatomy only. Such concealment as there is has nothing to do with modesty but is rather designed to suggest and provoke. On the frontispiece of the circular there appears a man with a camera seemingly taking a picture of the only concealed portion of the anatomy of one of the models.

The prospective purchaser is invited to order his movies, stills or slides by the name of the model he prefers. He also may order a pocket movie viewer or a folding slide viewer with wallet "which you can keep in your pocket" for handy "on the spot" viewing. It is noted that "you must be over 21 to order".

Most of the text has implications similar to those in the language representing that each movie features "a different model in a varied assortment of unretouched front, side and back views" and asking that the customer "open up and see for yourself how our nude movies, photos and color slides will help you". The figures are referred to several times as "art nudes" and on the last page the circular says:

"The Female Nude Figure * *

"It's a known fact that the basic way of learning to be creative is to study and master the Female Nude Figure!

"Naturally, the best way of studying the Female Nude Figure is to have real, live models pose for you but in most cases, this ideal situation is not readily available. The very next best thing then, is to have your very own personal ready reference Nude photographic file.

"That's where we come in! We will supply you with this practical working material in the form of our Guaranteed Unretouched Nude Movies, Photos and Color Slides that include many differently proportioned models posed in front views, back views, full length, and close-up poses.

"Don't delay * * * study and then master the Nude Female Figure by mailing your order for our exclusive * * * professionally made Nude Movies, Photos and Color Slides."

As I have noted, the Post Office Department did not make a finding that this circular was obscene, or that the material which it advertised was obscene. Its finding that the circular violated Section 259a is based solely on the construction given by the Hornick case to 18 U.S.C. § 1461,[2] the criminal obscenity statute which Section 259a parallels.

2. The relevant portions of § 1461 provide: "Every obscene, lewd, lascivious, indecent, filthy or vile article * * * and * * * "Every written or printed * * * circular, * * * or notice of any kind giving information * * * where, or how, or from whom * * * any of such * * * articles * * * may be obtained * * * "Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier."

Hornick involved an appeal from a conviction under Section 1461 for depositing in the mails advertisements giving information as to where obscene matter could be obtained. It was not claimed, and the court did not find, that the circulars mailed were in themselves obscene. The material advertised was not before the court and there was no evidence as to its contents. The court merely found "that the whole tone of both of these advertisements gives the leer that promises the customer some obscene pictures". It held that it made no difference whether the advertisement itself was obscene or whether the matter to be supplied pursuant to the advertisement turned out to be obscene. The offense of mailing material giving information as to where obscene matter might be obtained was committed if the mailed material purported to give such information "even though what was sent in response to the advertisement to the gullible purchasers is as innocent as a Currier & Ives print or a Turner landscape".

The court affirmed the conviction solely on this theory.

Hornick was decided prior to Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, which laid down the tests to be applied in determining what material may be found obscene and thus not entitled to the constitutional protections of freedom of speech and press. I have recently had occasion to discuss the Roth case and its effects in Grove Press, Inc. v. Christenberry, D.C. S.D.N.Y., 175 F.Supp. 488, 492–494, 498–499. There is no need to cover the ground again here.

Roth holds that material is obscene if "to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest" [354 U.S. 476, 77 S.Ct. 1311]. Only material meeting this test may be excluded from the protections of the First Amendment on the ground that it is obscene. Neither the Roth case nor the cases which follow it, nor those which it cites with approval, hold that a mere promise to supply material which may be obscene

falls within the penumbra of obscenity, where neither the material containing the promise nor the material to be supplied in themselves are obscene.

The Hornick case has been criticized as standing alone. See United States v. Schillaci, D.C.S.D.N.Y., 166 F.Supp. 303, 306. I doubt whether the theory on which Hornick proceeds is presently valid, particularly in the light of the warning of the Supreme Court in Roth, repeated by it in Smith v. People of State of California, 80 S.Ct. 215, 219, that "the door barring federal and state intrusion into [the area of freedom of speech and press] cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests".

I cannot sustain the order of the Postmaster General upon the ground relied on by the Hearing Examiner and the Judicial Officer. I agree that the circular at bar meets the standards applied by Hornick. But it seems to me that absent a finding either that the circular itself is obscene or that the matter to be purchased in response to it is obscene or both, a mere showing of "the *leer* that promises the customer obscene pictures" is not sufficient, standing alone, to establish a violation of the statute.

It does not follow from this, however, that the circular does not violate the obscenity statutes or that the order of the Postmaster General should be set aside. The Judicial Officer pointed out that the circular is "similar" in content to matter recently held by this court to violate the obscenity statutes in Monart, Inc. v. Christenberry, supra, and Glanzman v. Christenberry, supra. Indeed, a comparison of the matter before the court in those cases with the circular in the case at bar indicates that the content is scarcely distinguishable.

In both Monart and Glanzman the mailed advertisements were held to be obscene in themselves. In Glanzman, where, as here, the Department proceeded on the Hornick theory, the court found that the circulars did not promise the

customer anything more obscene than the samples which they reproduced. It held that the Hornick case was therefore not apposite but that since the circulars themselves were obscene and their mailing would be a clear violation of the obscenity statutes, they were properly barred from the mails.

Consideration of the circulars themselves may well lead to the same result here. Indeed, I would be inclined to follow Monart and Glanzman and to sustain the order of the Postmaster General upon the ground that the circulars themselves were obscene and non-mailable but for a further consideration which I will refer to a little later.

Plaintiff's argument that the per curiam decision of the Supreme Court in Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352, compels a holding that the circular now before me is not obscene is specious. The same argument was raised and rejected in Glanzman. It is plain that the Supreme Court in the Sunshine Book case did not give blanket approval to all material containing nude photographs. It held only that the magazine there under consideration, published by a bona fide group devoted to the cult of nudism, and containing pictures of nudists in the nude, was not obscene. There was no question of the sincerity of purpose of the publishers and the objective of the photographs and text was not an appeal to prurient interest.

In the circular at bar there is little doubt that the publisher's purpose is to appeal to the salaciously minded. No one could be naive enough to suppose that these photographs have anything whatever to do with "art". The circular does not contain any "ideas of redeeming social importance". Nor has it the slightest vestige of literary or artistic merit. The publisher's purpose in putting out the material may well be "a cardinal determinative". See Glanzman v. Schaeffer, D.C.S.D.N.Y., 143 F.Supp. 243, 247.

■ Nevertheless, I am not prepared on the record now before me to hold this circular obscene or to pass finally on the validity of the Postmaster General's order. As Mr. Justice Brennan pointed out in Roth, what constitutes obscenity must be determined by "applying contemporary community standards". Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498. In Grove Press, Inc. v. Christenberry, I held that evidence as to what the contemporary community standards were was plainly relevant and admissible on the question of whether or not matter was obscene. (175 F.Supp. 502). In the most recent pronouncement of the Supreme Court of the United States on the subject, Smith v. California, supra, Mr. Justice Frankfurter, concurring, said, 80 S.Ct. 225:

"There is no external measuring rod of obscenity. Neither, on the other hand, is its ascertainment a merely subjective reflection of the taste or moral outlook of individual jurors or individual judges. Since the law through its functionaries is 'applying contemporary community standards' in determining what constitutes obscenity, Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498, it surely must be deemed rational, and therefore relevant to the issue of obscenity, to allow light to be shed on what those 'contemporary community standards' are. Their interpretation ought not to depend solely on the necessarily limited, hit-or-miss, subjective view of what they are believed to be by the individual juror or judge. It bears repetition that the determination of obscenity is for juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of 'contemporary community standards'."

It was his view that to exclude relevant evidence as to what contemporary community standards were in an obscenity case would be violative of constitutional due process. Mr. Justice Harlan, concurring in part and dissenting in part, was of similar views.

Here there is no evidence before me as to what contemporary community standards are with respect to material similar in content to this circular. Moreover, since the case was tried before the Post Office Hearing Examiner solely on the theory that the circular had the "leer that promises" within the meaning of the Hornick case [229 F.2d 121], the respondent was not called upon to produce evidence of contemporary community standards as to the material in the circular. His one proffer of what he claimed to be comparable material as evidence of such standards was rejected by the Hearing Examiner. I am not prepared to decide this case on the basis of my "necessarily limited, hit-or-miss, subjective view" of what I may believe contemporary community standards to be. See Smith v. People of State of California, supra, 80 S.Ct. 215.

The defendant's motion for summary judgment, relying as it does solely on the record in the administrative proceedings before the Post Office Department, throws no more light on contemporary community standards than do the administrative proceedings themselves, and they throw none. In the posture of the case as it now stands what those standards may be as applied to the circular under attack is a question of fact which remains to be determined. The defendant has not met the burden of showing that "there is no genuine issue as to any material fact" which would entitle him to summary judgment. Rule 56, F.R.Civ.P.; Arnstein v. Porter, 2 Cir., 154 F.2d 464; Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130; Rockefeller Center Luncheon Club v. Johnson, D.C.S.D.N.Y., 116 F.Supp. 437.

Therefore the motion for summary judgment may not be granted.

This leaves for consideration the plaintiff's motion for a preliminary injunction. The determination of that motion is of course based upon different considerations. It is too well settled to require discussion that a preliminary injunction may not be granted unless the moving party shows a reasonable probability of success upon the trial. See Glanzman v. Schaeffer, supra; Speedry Products, Inc. v. Dri Mark, Inc., 2 Cir., 271 F.2d 646. The plaintiff here has wholly failed to make such a showing here. Indeed, it appears unlikely that he will succeed upon a trial. Both the content and the tone of the circular indicates that "to the average person * * * its dominant theme taken as a whole appeals to prurient interest". Up to now there is nothing before me to show that even the broad community standards which presently apply in such matters would tolerate this material. The fact that the plaintiff is not foreclosed on this issue and that defendant has not made out sufficient to entitle him to summary judgment does not show that there is probability that the plaintiff will succeed on the trial and thus is entitled to a temporary injunction.

For these reasons both defendant's motion for summary judgment and plaintiff's motion for a preliminary injunction must be denied.

It is so ordered.