[Civ. No. 28898.   Second Dist., Div. Three.   Sept. 30, 1965.]

CLAYTON W. KIRBY, Plaintiff and Appellant, v. THE MUNICIPAL COURT FOR THE NEWHALL JUDICIAL DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

Edwin M. Rosendahl for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Real Party in Interest and Respondent.

ASHBURN, J.*—Petitioner Kirby was charged in the municipal court with violation of section 311.5 Penal Code, a misdemeanor. The complaint was filed on June 23, 1964, defendant demurred, same was overruled, and he entered a plea of not guilty. Thereupon he filed in the superior court a petition for writ of prohibition against further proceedings upon the charge because of unconstitutionality of the statute. After argument of the legal question the court denied an alternative writ and petitioner has appealed.

The said statute, section 311.5 Penal Code, provides: ''Every person who writes or creates advertising or solicits anyone to publish such advertising or otherwise promote the sale or distribution of matter represented or held out by him to be obscene, is guilty of a misdemeanor.''

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The accusatory pleading alleges that a misdemeanor was committed on June 3, 1964, by Kirby, "who did willfully and unlawfully write and create advertising and promote the sale and distribution of matter represented and held out by said person to be obscene."

Appellant contends that the statute is void upon its face because it is a "no intent" obscenity statute, directly in conflict with the First Amendment to the federal Constitution and with the holding of the United States Supreme Court in *Smith* v. *California,* 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205].

Section 952 Penal Code of this state provides: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. *It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. . . ."* [Italics added.]

This statute does not offend the Constitution of the United States or that of California. (*People* v. *Covington,* 1 Cal.2d 316, 319-320 [34 P.2d 1019]; *People* v. *Lamb,* 204 Cal.App.2d 255, 263 [22 Cal.Rptr. 284]; appeal dismissed 371 U.S. 234 [83 S.Ct. 326, 9 L.Ed.2d 495].)  Moreover, specific intent (if that be an element of the crime, as appellant contends) is adequately alleged by use of the words "willfully and unlawfully" found in the instant complaint (*Matter of Application of Ahart,* 172 Cal. 762, 765 [159 P. 160]; *People* v. *Odom,* 19 Cal.App.2d 641, 644-646 [66 P.2d 206]; *People* v. *Swenson,* 127 Cal.App.2d 658, 662-664 [274 P.2d 229]; *People* v. *Saffell,* 74 Cal.App.2d Supp. 967, 980 [168 P.2d 497]; *People* v. *Loeper,* 167 Cal.App.2d 29, 33 [334 P.2d 93]).

The record does not disclose the text of the subject matter of the advertising alleged to have been held out by defendant to be obscene but it does say that he wrote and created it; so at this juncture of the case it is to be assumed that, as he represented, it was actually obscene and known to defendant to be such.

In this nation, dedicated to the concept of ordered liberty (*Palko* v. *Connecticut,* 302 U.S. 319, 325 [58 S.Ct. 149, 82 L.Ed. 288]), there are no absolute personal rights. This applies to preferred liberties such as freedom of speech and the press. All are subject to reasonable limitation and regula-

tion. (*Cox* v. *New Hampshire*, 312 U.S. 569, 574 [61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396] ; *Poulos* v. *New Hampshire*, 345 U.S. 395, 405 [73 S.Ct. 760, 97 L.Ed. 1105, 30 A.L.R.2d 987] ; *Max Factor & Co.* v. *Kunsman*, 5 Cal.2d 446, 459-462 [55 P.2d 177] ; *Chrisman* v. *Culinary Workers' Local No. 62*, 46 Cal.App.2d 129, 132-133 [115 P.2d 553] ; 16 C.J.S., § 2026, p. 990 ; § 213(5), p. 1107 ; § 213(7), p. 1111.) ▆ In each case of attack upon a statute, ordinance or court rule as unconstitutional there must be a balancing of public welfare against personal rights and a determination of the delicate question of which shall prevail. These principles must form the lode star of our inquiry of where the truth lies in this area of advertising obscene literature.

▆ '' [O]bscenity is not within the area of constitutionally protected speech or press.'' (*Roth* v. *United States*, 354 U.S. 476, 485 [77 S.Ct. 1304, 1 L.Ed.2d 1498].) The word has crystallized through court decisions to mean in this connection nothing less than ''hard-core pornography'' (*Zeitlin* v. *Arnebergh*, 59 Cal.2d 901, 917-918 [31 Cal.Rptr. 800, 383 P.2d 152]) and the question of whether it is shown in any given case is one of law (*Zeitlin* v. *Arnebergh, supra,* pp. 908-910) where it arises before trial of the accusation. (See fn. 11 on p. 908 of 59 Cal.2d.) Certainly at the present stage of this case we have only a question of law, for the complaint alleges that defendant wrote and through advertising promoted the sale and distribution of material which he represented and held out to be obscene. If this be true, as we must assume for present purposes, defendant cannot be heard to deny the fact of obscenity which he has avowed to exist.

*Smith* v. *California*, 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205] does not support appellant's contention that section 311.5 is invalid because it is a ''no intent'' statute and thus an invasion of the right of free speech. That case did not involve the question here presented. Smith was convicted under a city ordinance that prohibited possession of an obscene book or writing in any place where books are kept for sale. The ordinance was construed by the Appellate Department of the Los Angeles Superior Court as including ''no element of scienter—knowledge of appellant of the contents of the book'' alleged to be obscene. It was held that this elimination of the scienter element of the offense of possessing or selling indecent books ''may tend to work as substantial restriction on the freedom of speech and of the press''. (P. 150.) Also: ''We have held that obscene speech and writings are not protected by the constitutional guarantees of freedom of

speech and press. *Roth* v. *United States,* 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498]. The ordinance here in question, to be sure, only imposes criminal sanctions on a bookseller if in fact there is to be found in his shop an obscene book. But our holding in Roth does not recognize any state power to restrict the dissemination of books which are not obscene; and we think this ordinance's strict liability feature would tend seriously to have that effect, by penalizing booksellers, even though they had not the slightest notice of the character of the books they sold. . . .'' (P. 152.) The majority opinion concluded as follows: ''We need not and most definitely do not pass today on what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; whether honest mistake as to whether its contents in fact constituted obscenity need be an excuse; whether there might be circumstances under which the State constitutionally might require that a bookseller investigate further, or might put on him the burden of explaining why he did not, and what such circumstances might be. Doubtless any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene, but we consider today only one which goes to the extent of eliminating all mental elements from the crime.'' (P. 154.) . . .

''The existence of the State's power to prevent the distribution of obscene matter does not mean that there can be no constitutional barrier to any form of practical exercise of that power. Cf. *Dean Milk Co.* v. *Madison,* 340 U.S. 349 [71 S.Ct. 295, 95 L.Ed. 329]. It is plain to us that the ordinance in question, though aimed at obscene matter, has such a tendency to inhibit constitutionally protected expression that it cannot stand under the Constitution.'' (P. 155.)

The intent held in *Smith* to be requisite to a valid conviction is not the general intent which inheres in the deliberate doing of an act that violates a law (*People* v. *Dillon,* 199 Cal. 1, 7 [248 P. 230]; 14 Cal.Jur.2d, § 86, p. 275) but is a specific intent to sell a book known to be obscene,—the element of such knowledge being essential to the existence of the proscribed intent. It is this kind of intent that appellant's counsel say should be made an element of the crime defined in section 311.5,—not a mere intent to advertise for sale a writing which may or may not prove to be pornographic but an intent to proffer for sale one that is known to be of that condemned

quality. We hold, as will appear, that the presence of such intent is not requisite to a violation of the statute and that its absence from the law does not offend against any of appellant's constitutional protections.

It is to be observed that section 311.5 relates to one who writes or creates advertising or solicits publication of same or promotes sale or distribution of matter represented to be obscene. So far as he is concerned it is obscene and he should not be heard to claim otherwise. ██ Such material has no constitutional protection either in its sale or in advertising same for sale. ██ So far as concerns the accusation, the averment that defendant advertised obscene matter "wilfully and unlawfully" supplies the element of knowledge of its forbidden character. (Authorities, *supra.*)

The validity of statutes like section 311.5 is not a new question, nor should its answer be in doubt. As long ago as 1895 the Supreme Court of the United States in *Grimm* v. *United States,* 156 U.S. 604 [15 S.Ct. 470, 39 L.Ed. 550] dealt with the question now before us. The case arose under section 3893 Revised Statutes as amended in 1888, which is quoted in the margin.[1] Grimm having been convicted of violation of the statute, the court discussed his attack upon the indictment, saying at pages 608-609 : "It is insisted that the possession of obscene, lewd, or lascivious pictures constitutes no offense under the statute. This is undoubtedly true, and no conviction was sought for the mere possession of such pictures. The gravamen of the complaint is that the defendant wrongfully used the mails for transmitting information to others of the place where such pictures could be obtained, and the allegation of possession is merely the statement of a fact tending to interpret the letter which he wrote and placed in the post office.

"It is said that the letter is not in itself obscene, lewd, or lascivious. This also may be conceded. But however innocent on its face it may appear, if it conveyed, and was intended to

---

[1] "[E]very obscene, lewd, or lascivious book, pamphlet, picture, . . . and every written or printed card, letter, . . . *giving information, directly or indirectly, where or how, or of whom, or by what means any of the hereinbefore mentioned matters, articles, or things may be obtained or made,* whether sealed as first-class matter or not, are hereby declared to be nonmailable matter, and shall not be conveyed in the mails nor delivered from any post office nor by any letter carrier; and *any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter* . . . shall, for each and every offense, be fined upon conviction thereof not more than five thousand dollars, or imprisoned at hard labor not more than five years, or both, at the discretion of the court." (Italics added.) The present form of the statute is section 1461 of 18 United States Code.

convey, information in respect to the place or person where, or of whom, such objectionable matters could be obtained, it is within the statute.

"Again, it is objected that it is not sufficient to simply allege that the pictures, papers, and prints were obscene, lewd, and lascivious; that the pleader should either have incorporated them into the indictment or given a full description of them so that the court could, from the face of the pleading, see whether they were in fact obscene. We do not think this objection is well taken. . . . it is sufficient to allege its character and leave further disclosures to the introduction of evidence. *It may well be that the sender of such a letter has no single picture or other obscene publication or print in his mind, but, simply knowing where matter of an obscene character can be obtained, uses the mails to give such information to others. It is unnecessary that unlawful intent as to any particular picture be charged or proved.* It is enough that in a certain place there could be obtained pictures of that character, either already made and for sale or distribution, or from some one willing to make them, and that the defendant, aware of this, used the mails to convey to others the like knowledge." (Italics added.)

*Kingsley Books, Inc.* v. *Brown,* 354 U.S. 436 [77 S.Ct. 1325, 1 L.Ed.2d 1469] emphasizes the propriety of reasonable regulation by the State of the exercise of fundamental liberties. It involved and upheld an injunction against distribution of matter alleged to be obscene, issued under statutory authority. The statute provided for trial one day after joinder of issue and decision by the court within two days after conclusion of the hearing; if permanent injunction was granted, surrender and destruction of the obscene matter followed. The Supreme Court said in part: "Neither in the New York Court of Appeals, nor here, did appellants assail the legislation insofar as it outlaws obscenity. The claim they make lies within a very narrow compass. Their attack is upon the power of New York to employ the remedial scheme of § 22-a. Authorization of an injunction pendente lite, as part of this scheme, during the period within which the issue of obscenity must be promptly tried and adjudicated in an adversary proceeding for which 'Adequate notice, judicial hearing, [and] fair determination' are assured, 208 Misc. 150, 164 [142 N.Y.S.2d 735, 747], is a safeguard against frustration of the public interest in effectuating judicial condemnation of obscene matter. *It is a brake on the temptation to exploit a filthy business* offered by

the limited hazards of piecemeal prosecutions, sale by sale, of a *publication already condemned as obscene.* New York enacted this procedure on the basis of study by a joint legislative committee. Resort to this injunctive remedy, it is claimed, is beyond the constitutional power of New York in that it amounts to a prior censorship of literary product and as such is violative of that 'freedom of thought, and speech' which has been 'withdrawn by the Fourteenth Amendment from encroachment by the states.' . . . And so our starting point is that New York can constitutionally convict appellants of keeping for sale the booklets incontestably found to be obscene. *Alberts* v. *California,* decided this day [1 L.Ed.2d 1498]. The immediate problem then is whether New York can adopt as an auxiliary means of dealing with obscene merchandising the procedure of § 22-a.

"We need not linger over the suggestion that something can be drawn out of the Due Process Clause of the Fourteenth Amendment that restricts New York to the criminal process in seeking to protect its people against the dissemination of pornography. *It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. Whether proscribed conduct is to be visited by a criminal prosecution or by a qui tam action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice. . . .*" (Pp. 440, 441.) (Italics added.) The holding was that the opportunity for a prompt court hearing and adjudication before branding the defendant's material obscene was sufficient protection of his constitutional right, the statute being "concerned solely with obscenity and, as authoritatively construed, it studiously withholds restraint upon matters not already published and not yet found to be offensive." (P. 445.)

*Roth* v. *United States* and *Alberts* v. *California,* 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498] were decided on the same day as *Kingsley Books.* In the *Roth* case defendant was convicted of violation of 18 United States Code, section 1461, which is quoted in the margin.[2] Alberts was convicted of vio-

---

[2]"Every obscene, lewd, lascivious, or filthy book, pamphlet, picture, paper, letter, writing, print or other publication of an indecent character; and

" . . . . . . . . .

"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind *giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made,* . . . whether sealed or unsealed . . . .

lation of section 311 California Penal Code as it stood in 1955[3] and before enactment of section 311.5. "Alberts conducted a mail-order business from Los Angeles. He was convicted by the Judge of the Municipal Court of the Beverly Hills Judicial District (having waived a jury trial) under a misdemeanor complaint which charged him with lewdly keeping for sale obscene and indecent books, and with writing, composing and publishing an obscene advertisement of them, in violation of the California Penal Code." (*Roth* v. *United States, supra,* 354 U.S. at p. 481.) Both judgments were affirmed. In each case the advertisements which were mailed or published were alleged and found to be obscene. The court said at page 481: "The dispositive question is whether obscenity is utterance within the area of protected speech and press." This question was answered in the negative (p. 485). The court then discussed the true meaning of "obscenity" as used in connection with the guaranty of free speech and press and said at page 489: "Both trial courts below sufficiently followed the proper standard. Both courts used the proper definition of obscenity." At page 492: "In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

Thus it appears that a statute prohibiting advertising matter which is actually obscene violates no constitutional right and must be upheld. The language of section 311 Penal Code which was involved in the *Alberts* case means the same as today's section 311.5 although it is not quite as specific as

---

"  .  .  .  .  .  .  .  .  .  .  .
"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier." (Italics added.)

This section also provides that anyone who knowingly deposits for mailing any such nonmailable matter shall be subject to fine or imprisonment.

[3] "Every person who wilfully and lewdly, either:
"  .  .  .  .  .  .  .  .  .  .  .
"3. Writes, composes, stereotypes, prints, publishes, sells, distributes, keeps for sale, or exhibits any obscene or indecent writing, paper, or book; or design, copies, draws, engraves, paints, or otherwise prepares any obscene or indecent picture or print; or molds, cuts, casts, or otherwise makes any obscene or indecent figure; or,

"4. *Writes, composes, or publishes any notice or advertisement of any such writing, paper, book, picture, print or figure;* . . .

"  .  .  .  .  .  .  .  .  .  .  .
"6. . . . . is guilty of a misdemeanor. . . ." [Italics added.]

311.5. Clearly the *Alberts* ruling does not sustain appellant's attack upon section 311.5 in the case at bar.

*Manual Enterprises, Inc.* v. *Day,* 370 U.S. 478 [82 S.Ct. 1432, 8 L.Ed.2d 639] is a case involving 18 United States Code section 1461. Publishers of certain magazines sought injunctive relief against a ruling of the Post Office Department barring from the mails their magazines and certain advertisements contained therein. The Supreme Court was unable to agree upon a majority opinion, and Mr. Justice Harlan spoke first; he dealt with the question of whether the magazines themselves were obscene and held that, viewed in the light of accepted standards, they were not and that the ruling of nonmailability could not be sustained on that ground. He then turned to the matter of advertisements: "There remains the question of the advertising. It is not contended that the petitioners held themselves out as purveyors of obscene material, or that the advertisements, as distinguished from the other contents of the magazines, were obscene on their own account. The advertisements were all by independent third-party photographers." (P. 491.) Therein lies a differentiation from our case of basic importance. Here the charge is that defendant himself wrote the advertisement and caused it to be published with a representation that it was obscene.

There is no danger that enforcement of section 311.5 will interfere with any legitimate enterprise, for the advertiser deals only in obscenity and boasts that that is his field; the customer belongs only to the class whose minds and appetites are directed toward prurient writings which stimulate prurient thoughts. The court then continues as follows:

"And, neither with respect to the advertisements nor the magazines themselves, do we understand the Government to suggest that the 'advertising' provisions of § 1461 are violated if the mailed material merely "gives the leer that promises the customer some obscene pictures.' *United States* v. *Hornick* (C.A.3 Pa.) 229 F.2d 120, 121. Such an approach to the statute could not withstand the underlying precepts of Roth. See *Poss* v. *Christenberry* (D.C. N.Y.) 179 F.Supp. 411, 415; cf. *United States* v. *Schillaci* (D.C. N.Y.) 166 F. Supp. 303, 306.''[4] (P. 491.) This last quoted language is not adopted by any justice other than Mr. Justice Stewart, and it obviously is dictum for the defendants were not prosecuted

---

[4]The word "leer" means: "A gaze askance; a look or cast of the eye conveying a sly, sinister, or immodest suggestion." (Webster's New Internat. Dict. 2d ed.)

for advertising by third parties. Moreover, this view is rejected by Mr. Justice Clark as hereinafter quoted. The obscure phraseology of Mr. Justice Harlan seems to mean that the advertisements could not be considered obscene in themselves, as opposed to being violative of the law through giving information as to where obscene matter could be obtained; indeed, the opinion states that the postal officials did not obtain the names of the advertisers from the lists in petitioners' magazines.

The opinion next deals with the necessity of the publisher knowing that some of his advertisers were offering to sell obscene material,—not whether an advertiser must be proved to know the truth of his representation to the public that matter offered through him is in fact obscene. The court held that the above mentioned knowledge of the publisher must be proved in a prosecution or civil proceeding against him,— this for the primary reason that ''the power of the Post Office to bar a magazine from the mails, if exercised without proof of the *publisher's knowledge of the character of the advertisements* included in the magazine, would as effectively 'impose a severe limitation on the public's access to constitutionally protected matter,' 361 U.S. at 153 [80 S.Ct. at p. 218, 4 L.Ed.2d 211], as would a state obscenity statute which makes criminal the possession of obscene material without proof of scienter.'' (Pp. 492-493.) (Italics added.)

In view of the divergence of views expressed in three different opinions, the dissent of Mr. Justice Clark becomes especially significant. At page 520: ''I would affirm the judgment on the sole ground that the magazines contain information as to where obscene material can be obtained and thus are nonmailable. I, therefore, do not consider the question of whether the magazines as such are obscene.'' Again: ''Giving regard to the wording of § 1461, the interests involved, and the nature of the sanction imposed, I fail to see how the sender's scienter is anywise material to a determination of nonmailability.'' (P. 524.) ''I believe the only possible interpretation of § 1461 is that the sender's scienter is immaterial in determining the mailability of information on where obscene material can be obtained.'' (P. 525.)

Also pertinent to our problem are Mr. Justice Clark's further remarks: ''Section 1461 very explicitly demands that no information 'be conveyed in the mails or delivered from any post office or by any letter carrier' if it in fact tells how obscene material can be obtained. This command running to

those charged with the administration of the postal system is not conditioned by the words of the statute upon the sender's scienter or any remotely similar consideration. When it wants to inject a scienter requirement, the Congress well knows the words to use, as evidenced by the very next sentence in § 1461 establishing the criminal sanctions: 'Whoever *knowingly* uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both . . . .' (Emphasis supplied.)'' (P. 525.) This suggests a like consideration applicable to section 311.2 California Penal Code, which expressly requires knowledge by the defendant of the obscene nature of material which he ''knowingly: . . . prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute . . . .'' So nearly do sections 311.2 and 311.5 cover the same ground that the use of the word ''knowingly'' in the one instance and its omission in the other is most persuasive of legislative intent.

Referring to Mr. Justice Harlan's mention of *United States* v. *Hornick* (3d Cir.) 229 F.2d 120, 121, it does not appear to be a repudiation by the court of that ruling, as appellant herein claims. In that case defendants were convicted under 18 United States Code section 1461 of giving information as to where and how obscene pictures and publications might be obtained,—not the mailing of obscene matter but merely the knowingly mailing of advertisements and a notice disclosing where obscene matters could be obtained. After quoting the challenged matter, the court in the *Hornick* case said at pages 121-122: ''We have no doubt that the whole tone of both of these advertisements gives the leer that promises the customer some obscene pictures. Indeed, it has been held that under this section the announcement itself is not required on its face to promise obscene material if that is its purpose. . . .

''. . . . . . . . . . . . .

''As we have already said, information as to where such obscene matter can be obtained shouts loudly from the words used by the advertising of the defendants. We do not think it is necessary that representations made in these advertisements be true. The statute says 'advertisement . . . giving information.' The statute does not say that the advertisement must be true or that the information must be accurate. What is forbidden is advertising this kind of stuff by means of the United States mails. We think that the offense of using the

mails to give information for obtaining obscene matter is committed even though what is sent in response to the advertisement to the gullible purchasers is as innocent as a Currier and Ives print or a Turner landscape.

"It is not, therefore, necessary for us to determine whether these pictures were obscene. The defendants did purport to give information as to where obscene matter could be obtained. " . . . . . . . . . . .

"There is a finding of fact that the defendants thought the pictures they sent were not obscene. That this makes no difference was held by the Supreme Court in *Rosen* v. *United States* (1896) 161 U.S. 29, 41 [16 S.Ct. 434, 480, 40 L.Ed. 606]. That case is still the law. . . ." This appeals to us as sound doctrine.

Mr. Justice Harlan's citation of the nisi prius cases of *Poss* v. *Christenberry* (D.C. N.Y.) 179 F.Supp. 411, 415 and *United States* v. *Schillaci* (D.C. N.Y.) 166 F.Supp. 303, 306 does not add strength to his dictum.

That *Hornick* does not express a moribund doctrine appears from the decision of the Sixth Circuit Court of Appeals in *United States* v. *Perkins*, 286 F.2d 150, affirming conviction under section 1461, 18 United States Code. At page 151, the court quoted *Hornick* with obvious approval:

"He contends that the admission of this evidence allowed hearsay evidence to be used to prove that the materials which would have been sent would have been obscene. However, it was not necessary that the Government establish that material which would have been supplied in response to orders solicited by defendant's advertising circulars would, in fact, have been obscene. *United States* v. *Hornick* (3d Cir. 1956) 229 F.2d 120, 122. The Third Circuit, dealing with this subject, said: 'We think that the offense of using the mails to give information for obtaining obscene matter is committed even though what is sent in response to the advertisement to the gullible purchasers is as innocent as a Currier and Ives print or a Turner landscape.' " (*Grimm* v. *United States, supra*, 156 U.S. 604, 608 is also quoted to the same effect.

We think it fairly appears that the authorities are not opposed to the validity of the statute here under consideration; that the person who writes or who advertises the sale of material "represented or held out by him to be obscene" is charged as matter of law with knowledge of its contents, and is estopped to deny that fact where and if it becomes material. *State* v. *Holedger*, 15 Wash. 443 [46 P. 652, 653] makes these

sensible observations: "If one can edit and compose a publication without knowledge of its obscene character being conclusively presumed, then it would be idle to allege knowledge of its obscene character, because there would be no way of proving that he did have such knowledge. Such knowledge must be conclusively presumed from the fact of his editing and composing the publication, and we have no doubt that a person of reasonable understanding could readily determine what he was charged with by the knowledge conveyed in this information." (See also 67 C.J.S., § 7e, p. 32.)

Though we have discussed cases arising under the postal laws, which are considerably broader, less specific, than our state statute, we do not wish to be understood as passing upon the validity of a statute which seeks to punish publications that contain a mere "leer" promising obscene pictures or writings, or upon any issues not immediately pertinent to California's section 311.5.

Appellant's ultimate position is that this statute applies to one who does not know the contents of what he promotes and holds out to be obscene or does not recognize the pornographic character of it. Thus he elects himself (without any attempt to show ignorance of the material he has authored or advertised) as protagonist for all who engage in writing or advertising pornography, based upon the highly improbable hypothesis that they have in fact no recognition of the objectionable character of their wares. In discussing this we must proceed upon the improbable assumption that such ignorance does exist in one engaged in this obnoxious trade.

Clearly, advertising of matter which is found or conceded to be obscene is not within the protective area of free speech or press (established by *Alberts* v. *United States, supra,* 354 U.S. 476); such advertising is equally as subversive of good morals as is the sale of the article thus held out for sale, and the decisions in *Grimm* v. *United States, supra,* 156 U.S. 604; *United States* v. *Hornick, supra,* 229 F.2d 120; and *United States* v. *Perkins, supra,* 286 F.2d 150 specifically hold that an advertisement fitting into the description of our section 311.5—"represented or held out to be obscene"—is equally beyond the protection of free speech as is a sale of the subject literature regardless of whether that literature is itself barred from sale because pornographic.

Viewed as applicable to persons other than appellant (who incidentally makes no representation in his petition for a writ or his briefs that the matter held out to be obscene was not

so in fact)—applicable to persons who actually do not know the contents or complexion of the matter they advertise or represent to be obscene—section 311.5 is analogous to section 11503 Health and Safety Code which, referring to narcotics, declares it to be a crime to offer unlawfully to sell any narcotic to another and then to deliver ''any other liquid, substance, or material in lieu of any narcotic.'' Preying upon the perverted appetite of the customer and thus defrauding him may be treated by the court as a felony. This statute has been upheld against the claim of unconstitutionality in *People* v. *Hicks,* 222 Cal.App.2d 265, the court saying at page 271 [35 Cal.Rptr. 149] : '' 'It is clear that the statute in question was aimed at discouraging any traffic in narcotics and is therefore within the police power of the state.' (*People* v. *Shephard, supra,* p. 288.) As it cannot be said that the statute has no reasonable tendency to protect the public safety and health, 'the decision of the legislative body as to the necessity or reasonableness of the regulation, is conclusive. (*People* v. *Shephard, supra,* p. 288.)

''. . . Thus, what is generally regarded as 'bunco' may be defined as a narcotics offense when it occurs in connection with an offer to sell narcotics.

''. . . It is a matter of common knowledge that an addict is an easy prey of those who would take his money and who fail to carry out their bargain. This is an evil growing out of the narcotic traffic which the Legislature obviously sought to remedy.''

In *People* v. *Shephard,* 169 Cal.App.2d 283, 287-288 [337 P.2d 214] : ''Apparently, the appellant questions whether the Legislature can enact such a statute under the guise of protecting the health and morals of the people, when in fact the statute prohibits a person from offering to sell a narcotic and delivering a substance in lieu of the narcotic.''

. . . . . . . . . . . .

''In any event, without the assistance of the interim committee report, it is apparent that the Legislature had the intention of discouraging anyone from engaging or appearing to engage in the narcotic traffic. Anything which gives sustenance, solace, comfort or encouragement in the selling of narcotics or in the agreeing to sell narcotics, can be condemned, and properly so, by the Legislature. It is clear that the statute in question was aimed at discouraging any traffic in narcotics and is therefore within the police power of the state.''

*Haserot* v. *United States* (9th Cir.) 321 F.2d 582 dealt with the sole question of whether said section 11503 is a ''narcotic or marijuana'' law of California within the meaning of 18 United States Code section 1407(a), which requires a citizen who has been convicted of a narcotic offense to register with a customs official when reentering this country. The court said at page 583: ''Appellant contends that Section 11503 is 'merely a legislative enlargement of the California ''bunco'' law,' and not a narcotic law. . . . It seems clear to us that Section 11503 is a 'narcotic or marihuana law' of the State of California. . . .'' By the same token we find section 311.5 of our Penal Code to be part and parcel of a 1961 revision of our obscenity laws (Ch. 7.5 Pen. Code).

◼ We hold that imposing criminal sanctions upon advertising or representing or holding out of any writing as obscene, the telling where to get it, is intrinsically needed and designed for protection of those who have depraved tastes and desires, as much so as is the display of same at the moment of sale, and that section 311.5 is constitutional when applied to one who acts without actual knowledge of the contents or complexion of the written matter that he promotes.[5]

Section 311.5 was enacted in 1961 after American Law Institute had completed its 1957 draft of Model Penal Code. Our Supreme Court in *Zeitlin* v. *Arnebergh, supra,* 59 Cal.2d 901, 911 stated that the Legislature patterned its definition of obscenity upon one set forth in said Model Penal Code and it is fair to assume that section 311.5 was modeled upon section 207.10 of that Code, the purpose of which is explained in comments found on page 53 of Tentative Draft No. 6, *viz.*: ''Subsection (6) adopts a suggestion from the New York Penal law punishing advertising or other promotion of material 'purporting to be' obscene. In other words, if the actor plays on prurient interest, holding out the promise of forbidden thrills, he may be convicted without proof that any particular material he meant to supply meets the tests of obscenity set forth in subsection (2). Such advertising may legitimately be forbidden as probably fraudulent, and also on the ground that a strong suggestion that a book or picture is obscene may well make it so in the mind of those who are persuaded to buy on this basis. It has been suggested that such huckstering is in fact worse than deliberate sale of genuine obscenity be-

---

[5]We do not consider it necessary to rely upon the severability clause of section 9 of the revisory statute (Stats, 1961, ch. 2147, p. 4432) for such severability clauses seem to have little effect in this field. (See 61 Harv.L.Rev., p. 1213.)

cause: (1) the purchaser has frustration and a sense of being cheated in addition to his sense of guilt over desiring eroticism, and (2) it often constitutes a kind of defamation of serious works of learning or beauty."

The final draft of the Model Code carries forward the same thought in section 251.4(2)(e), but in clearer language. It reads: "(2) *Offenses*. Subject to the affirmative defense provided in subsection (3), a person commits a *misdemeanor* if he knowingly or recklessly: . . . (e) sells, advertises or otherwise commercially disseminates material, whether or not obscene, by representing or suggesting that it is obscene."

We entertain no doubt of the constitutionality of the statute here under consideration.

Judgment affirmed.

Ford, J., and Kaus, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 24, 1965. Peters, J., Tobriner, J., and Peek, J., were of the opinion that the petition should be granted.