[S. F. No. 16489.   In Bank.   Dec. 17, 1941.]

UNITED STATES OF AMERICA et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

190

William Fleet Palmer, United States Attorney, William F. Hall and Walter M. Campbell, Assistants United States Attorney, Ivan G. McDaniel and George Lyon for Petitioners.

J. H. O'Connor, County Counsel, A. Curtis Smith, Deputy County Counsel, and G. V. Weikert for Respondents.

EDMONDS, J.—This original proceeding in prohibition was instituted by the United States of America and certain members of committees appointed for the administration of the Federal Agricultural Adjustment Act of 1933, as amended in 1935 (7 U. S. C. A., sec. 601 *et seq.*), and as reenacted by the Agricultural Marketing Agreement Act of 1937 (7 U. S. C. A., sec. 674). The petitioners seek to prohibit the respondent superior court from taking any further action in a suit pending before it which was brought by certain shippers and handlers of oranges to enjoin the enforcement of an order issued by the Secretary of Agriculture, other than to dissolve a temporary restraining order and to dismiss cer-

tain orders to show cause. An alternative writ issued in response to which the respondent has filed a general demurrer.

The Agricultural Marketing Agreement Act of 1937, *supra*, in establishing a plan for regulating the interstate marketing of agricultural products, is designed to raise farm prices and thus restore to the farmer a lost purchasing power, to prevent waste resulting from overproduction and to eliminate the evils of unfair competition. The marketing provisions of the statute were upheld as constitutional in *Edwards* v. *United States*, 91 Fed. (2d) 767. The California Agricultural Adjustment Act of 1935 (Stats. 1935, chaps. 307, 416, pp. 1032, 1468; Deering's Gen. Laws, 1935 Supp., Act 146, p. 480; Deering's Gen. Laws, 1937, Act 146), held constitutional in *Brock* v. *Superior Court*, 9 Cal. (2d) 291 [71 Pac. (2d) 209, 114 A. L. R. 127], serves as a state counterpart to the federal act and regulates the intrastate marketing of agricultural commodities. The present controversy arose in connection with the administration of the federal act.

By the terms of that statute, the Secretary of Agriculture is empowered to enter into marketing agreements with producers and others engaged in the handling of agricultural commodities provided such handling is in the current of, or directly burdens or affects interstate or foreign commerce in such commodities (sec. 608b). He is likewise empowered to issue orders applicable to processors and others engaged in the handling of such commodities (sec. 608c [1]). Producers are specifically exempted from regulation (sec. 608c [13]). The manner of regulation, as applicable to fresh fruits, is prescribed by section 608c [6]. There may be (a) a limitation of the total quantity of any such commodity produced during a specified period, which may be marketed in interstate commerce, and (b) an allotment of this total quantity among handlers under a uniform rule based upon the amounts which each handler has available for current shipment, or upon the amounts shipped by each such handler in such prior period as the secretary determines to be representative, to the end that the total quantity may be equitably apportioned among all handlers. The order may provide for the selection by the Secretary of Agriculture of an agency to administer the provisions of the order (sec. 608c [7E]).

The statute provides that no order shall become effective until the handlers of not less than 80 per cent of the

volume of such commodity covered by the order have signed a marketing agreement (sec. 608c [8]), nor unless the Secretary of Agriculture determines that the issuance of such order is approved by a given percentage in number and volume of the producers within the production area specified in the marketing agreement (sec. 608c [8]). Nor shall any order be issued unless it regulates the handling of the commodity covered thereby in the same manner as the marketing agreement relating thereto (sec. 608c [10]). Any handler challenging the validity of an order may petition the Secretary of Agriculture for a modification thereof and may secure a judicial review of the secretary's ruling in the United States District Court (sec. 608c [15]).

In 1933, certain shippers and handlers of citrus fruits filed with the Secretary of Agriculture a petition seeking the institution of a program of prorated marketing with respect to oranges and grapefruit grown in California and Arizona. He entered into a marketing agreement with these petitioners and at the same time issued a license covering all shippers of oranges and grapefruit grown in the two states. On November 15, 1935, after notice and hearing, he executed an order, known as Order No. 2, which purports to regulate the handling of such fruit. Pursuant to the requirements of the act, he submitted this order to a vote of producers within the production area, and upon the basis of that vote, determined that it was approved by producers growing the requisite percentage in volume of the fruit.

The order became effective on January 13, 1936. It provides for weekly limitation from time to time of the total quantity of fruit which may be shipped in interstate commerce by all shippers and the prorate of such quantity among them. Other provisions include the appointment of certain persons to serve either as members of a Growers' Advisory Committee, or of a Distribution Committee. These committees are directed to find and determine for each week the quantity of weekly shipments of each variety of fruit deemed by them advisable to be shipped and prorated, and also to determine the prorate bases for each shipper who applies for allotments. Their reports and recommendations are required to be forwarded to the secretary who, upon approving the findings of the committees, shall fix the weekly allotment for each shipper.

The Secretary of Agriculture, acting through the two committees as his agents, enforced this order as to oranges from 1936 until August 22, 1940, when certain shippers and growers of oranges filed an action in the respondent court seeking to invalidate the order and to enjoin the members of the two committees from carrying out the duties prescribed for them thereunder. According to the complaint in that action, the order is void. Specifically, it is alleged that the order was not approved by the requisite number or percentage of growers as specified in the act, the Secretary of Agriculture having accepted certain votes unlawfully cast by the California Fruit Growers Exchange on behalf of certain producers. It is also charged that the order is violative of the statute since it purports to regulate the handling of oranges in a manner differing in several particulars from the regulatory scheme provided in the Agricultural Marketing Agreement Act of 1937, *supra*. The committeemen are sued as individuals, the complaint charging them with being interlopers having no authority to act.

Upon this complaint, the respondent court issued a temporary restraining order enjoining the defendants from prescribing any allotments or from in any other manner attempting to enforce the provisions of Order No. 2. Subsequently, and upon affidavits filed averring that certain of them had violated the temporary restraining order, the court issued orders to show cause why they should not be held in contempt of court. Thereafter the present proceeding was commenced. Later, the respondent court granted motions to dismiss the temporary restraining order and to quash the citation for contempt. A motion to dismiss the action, however, was denied.

The petitioners challenge the jurisdiction of the superior court to entertain or proceed with the action upon the following grounds: that the Marketing Agreement Act establishes a complete plan for administrative review of orders issued thereunder, the exhaustion of which administrative remedy is a jurisdictional prerequisite to any interference by the courts with the enforcement of such orders; that the Secretary of Agriculture, being the authority ultimately charged with the duty of administering and enforcing the provisions of Order No. 2, is an indispensable party to the injunction proceeding; that the federal courts have exclusive

jurisdiction over the enforcement of the act and the orders issued thereunder; and that the United States Circuit Court of Appeals having decided that the order is valid, the superior court has no jurisdiction to enjoin the federal agency.

The Agricultural Marketing Agreement Act of 1937, *supra*, includes provisions for the administrative review of any order promulgated under its terms (sec. 8c [15]). Any handler subject to an order may file a petition with the Secretary of Agriculture, stating that such order is not in accordance with law and praying for a modification thereof, or an exemption therefrom. The secretary's ruling thereon may be reviewed by the United States District Court.

According to the complaint in the injunction proceeding, six days before it was filed, the plaintiff shippers and growers filed with the Secretary of Agriculture a petition under section 8c [15] attacking Order No. 2 upon the same grounds as those alleged as grounds for issuance of the writ. In the respondents' brief, it is stated that ten months later the secretary ruled upon this petition. Whether the applicants sought a review of his ruling in the United States District Court does not appear, but that fact is not determinative of the issues in the present proceeding.

█ It is now firmly established in this state that a litigant must invoke and exhaust an administrative remedy provided by statute before he may resort to the courts. Jurisdiction to entertain an action for judicial relief is conditioned upon a completion of the administrative procedure. (*Abelleira* v. *District Court of Appeal*, 17 Cal. (2d) 280 [109 Pac. (2d) 942, 132 A. L. R. 715].) █ In the present case, the persons who are the plaintiffs in the injunction proceeding invoked the administrative process to secure a review of the challenged order and, at practically the same time, sought judicial relief. The respondents apparently contend that the requirement of exhaustion of administrative remedies applies only to erroneous orders and does not preclude judicial interference where, as here, an order is assailed as a nullity because illegally adopted and where the agents for enforcement appointed thereunder are charged with being mere pretenders claiming powers which they do not lawfully possess. But there is no substantial difference, insofar as the necessity for resort to administrative review is concerned, between an erroneous order and one which, it is claimed, is being executed in violation of statutory authority.

■ Conceding the existence of such a distinction, however, the doctrine of exhaustion of administrative remedies is not so limited. For example, it lies within the power of the administrative agency to determine in the first instance, and before judicial relief may be obtained, whether a given controversy falls within the statutory grant of jurisdiction (*United States* v. *Sing Tuck*, 194 U. S. 161 [24 Sup. Ct. 621, 48 L. Ed. 917]; *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41 [58 Sup. Ct. 459, 82 L. Ed. 638]; *Federal Trade Commission* v. *Claire Furnace Co.*, 274 U. S. 160 [47 Sup. Ct. 553, 71 L. Ed. 978]; *Federal Power Commission* v. *Metropolitan Edison Co.*, 304 U. S. 375 [58 Sup. Ct. 963, 82 L. Ed. 1408]; *South Porto Rico Sugar Co.* v. *Munoz*, 28 Fed. (2d) 820; 48 Yale L. J., 981, 992–995). And even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held to be a prerequisite to equitable relief (*Lawrence* v. *St. Louis-San Francisco Ry. Co.*, 274 U. S. 588 [47 Sup. Ct. 720, 71 L. Ed. 1219]; *St. Louis-San Francisco Ry. Co.* v. *Alabama Pub. Serv. Comm.*, 279 U. S. 560 [49 Sup. Ct. 383, 73 L. Ed. 843]; *Porter* v. *Investors Syndicate*, 286 U. S. 461 [52 Sup. Ct. 617, 76 L. Ed. 1226]; *Gorham Manufacturing Co.* v. *State Tax Commission*, 266 U. S. 265 [45 Sup. Ct. 80, 69 L. Ed. 279]; *United States* v. *Illinois Central R. R. Co.*, 291 U. S. 457 [54 Sup. Ct. 471, 78 L. Ed. 909]; *Hegeman Farms Corp.* v. *Baldwin*, 293 U. S. 163 [55 Sup. Ct. 7, 79 L. Ed. 259]; *Clark* v. *Lindemann & Hoverson Co.*, 88 Fed. (2d) 59; see cases collected in 48 Yale L. J., 996, 997). If, under the rule applied in these cases, an attack upon the constitutionality of the statute does not remove the necessity for following the prescribed administrative remedy, then clearly injunctive aid may not be had where, as here, the validity of a single regulation promulgated under such a statute is challenged.

True, there are decisions dispensing with the administrative requirement and permitting immediate judicial interference where the statute, under attack as unconstitutional or invalid, creates the administrative board or establishes the method of administrative review (*Hirsh* v. *Block*, 267 Fed. 614 [50 App. D. C. 56, 11 A. L. R. 1238]; *Stout* v. *Pratt*, 12 Fed. Supp. 864; *El Paso Elec. Co.* v. *Elliott*, 15 Fed. Supp. 81; *Gilbreath* v. *Willett*, 148 Tenn. 92 [251

S. W. 910, 28 A. L. R. 1147]). These cases were decided upon the theory that if the act be held unconstitutional *in toto,* the remedies provided thereby fall with it and, for that reason, need not be availed of by the litigant in the first instance. There is substantial authority to the contrary, however. (*Hegeman Farms Corp.* v. *Baldwin, supra; Porter* v. *Investors Syndicate, supra; United States* v. *Illinois Cent. R. R. Co., supra;* see other cases cited above.)

■ But, assuming the validity of the rule announced in the Hirsh and related cases, it is nevertheless not controlling in the present controversy. The plaintiffs in the injunction proceeding do not question the constitutionality of the Agricultural Marketing Agreement Act of 1937, *supra;* they do not dispute the authority of the Secretary of Agriculture nor do they question the existence of a validly created administrative remedy. They seek only a review of a particular order which they assert was not adopted in conformity with the requirements of the statute. The question whether this order complies with the legislative mandates is essentially one of fact and is nonjusticiable until those claiming to be aggrieved have secured a final administrative determination of their rights. The Agricultural Marketing Agreement Act of 1937, *supra,* gives a dissatisfied handler a hearing before the Secretary of Agriculture and a right of review of the secretary's ruling in the United States District Court whenever he attacks an order as ''not in accordance with law.'' The relief sought by the petitioners in the present proceeding is the same as that which the Secretary of Agriculture might give, and to adopt the contention of respondent would render the provision for administrative review ineffective.

■ The shippers, however, alleging irreparable damage, assert a need for immediate preventive relief and contend the administrative remedy is inadequate because the statute fails to provide a means for the stay of enforcement of orders pending their review. The inadequacy of the administrative remedy, arising from threatened irremedial injury, is a recognized ground for immediate injunctive relief, and, upon proof of that fact, the exhaustion requirement has frequently been held inapplicable. An example of such a situation is where a regulatory commission has imposed allegedly confiscatory rates upon a public utility.

Since the continued operation of the business under the lower rate might be so unprofitable as to result in the destruction of the business, a court will enjoin the enforcement of the new rate pending a final determination of its validity. (*Oklahoma Natural Gas Co.* v. *Russell,* 261 U. S. 290 [43 Sup. Ct. 353, 67 L. Ed. 659].)

The only allegation in the complaint for injunction regarding injury which might be suffered by the shippers of fruit is that continued enforcement of the order will prevent a marketing of all the oranges controlled by them. There is no showing that the limitation on weekly shipments will destroy their business. It is not alleged that they have been subjected to discriminatory treatment or that they are not doing business at a profit under the prorate plan. If they have obtained control of more fruit than they are permitted to handle under the regulation, application may be made to the Growers' Advisory Committee for a revision of their prorate bases to include such fruit within the estimate. In any case the order does not purport to regulate the amount of fruit which may be picked. Accordingly, when a shipper acquires fruit in excess of the quantity allotted him under the weekly quota, any injury suffered by him is self-inflicted. And since the order has been enforced against the shippers for over four years, it becomes even more apparent that there has been no showing of irreparable injury to warrant interference with an uncompleted administrative proceeding. (See *Hegeman Farms Corp.* v. *Baldwin, supra.*)

The respondent points out that several of the plaintiffs in the injunction proceeding are growers who are not given any administrative remedy under the statute. But neither the Agricultural Marketing Agreement Act of 1937, *supra,* nor Order No. 2 regulates the production of oranges and therefore growers are not proper party plaintiffs in that proceeding. The federal regulation has to do with the handlers alone and begins only when the fruit enters the stream of interstate commerce. Neither the statute nor the order require a grower to do, or to refrain from doing, anything. None of his legal rights is invaded or violated by the order. To be in a position to attack a statute or an order as invalid, it is not sufficient that the complaining party show damage to himself; in addition, he must show a

violation of his legal right by the statute or order which is attacked. (*Massachusetts* v. *Mellon,* 262 U. S. 447 [42 Sup. Ct. 597, 67 L. Ed. 1078]; *Alabama Power Co.* v. *Ickes,* 302 U. S. 464 [58 Sup. Ct. 300, 82 L. Ed. 374].)

For example, in *Wallace* v. *Ganley,* 95 Fed. (2d) 364, a group of producers sought to enjoin the enforcement of an order regulating milk which was issued by the Secretary of Agriculture under the Agricultural Adjustment Act as amended in 1935, *supra.* The order fixed minimum prices to be paid to the producers by the handlers. The producers attacked both the constitutionality of the statute and the validity of the order. It was held that the producers had no standing to maintain the suit as they were unable to show any wrongful act which directly resulted in a violation of their legal rights. So here, although the growers may be able to show certain damage arising from the restrictions imposed upon shippers by the order, they have suffered no legal wrong for the order does not directly affect them in its regulation. Consequently, they are in no position to challenge its validity.

Let a writ of prohibition issue as prayed for by the petitioners.

Gibson, C. J., Shenk, J., Curtis, J., and Traynor, J., concurred. Carter, J., concurred in the conclusion.