[Civ. No. 29008.   Second Dist., Div. Two.   Feb. 24, 1966.]

JAY PHILLIPS, Petitioner and Respondent, v. BOARD OF POLICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Defendants and Appellants.

Dennis R. Dubrow and Hertzberg, Geretz & Leveton for Petitioner and Respondent.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Frank D. Wagner, Deputy City Attorney, for Defendants and Appellants.

FOX, J.*—In March 1964 petitioner applied to the Board of Police Commissioners for a permit to sponsor and conduct a One-Night Dance for teenagers. The application was filed pursuant to Ordinance No. 111348, section 103.118 of the Los Angeles Municipal Code which requires such a permit prior to operating a teenager dance. A hearing was held as required by the ordinance. The hearing examiner recommended that the permit be denied. The board, after reading and considering the report and recommendation of the hearing examiner, unanimously adopted his recommendation and denied the permit. Petitioner thereafter filed a petition for declaratory relief and for writ of mandate. The court granted declaratory relief and held that sections 103.118(a)(1) and (2) were unconstitutional. The court also issued the peremptory writ of mandate and referred the matter back to the board for further consideration in light of the ruling made regarding declaratory relief.

It is from the judgment declaring these sections of Ordinance No. 111348 of the Municipal Code unconstitutional that this appeal is taken.

Section 103.118 of the Los Angeles Municipal Code provides, in part:

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

"No person may secure a permit to conduct or sponsor any teenage dance except an adult sponsoring group which has been approved by the board and which has assumed full and complete responsibility for the event, its direction and expenditure of funds."

Section 103.118, subsection (a)(1), defines an "adult sponsoring group" as a "non-profit organization whose primary object is to sponsor, regulate and control youth activities and child welfare. . . ."

The court below held that, although the purpose of the ordinance was to promote the welfare of teenagers and the classification contained within the definition of an "adult sponsoring group" was an attempt to carry out this purpose, such classification was not reasonably related to the purpose of the ordinance and hence was arbitrary and unreasonable.

The court stated in its findings that: "Sections 103.118(a)(1) and (2) contain a palpably arbitrary and unreasonable classification, in that the question of whether the sponsor of a teenage dance is a profit making or non-profit making organization bears no substantial relationship to the main objective and purpose of the ordinance," and that "no set of facts could reasonably be conceived which would indicate that a non-profit organization could better promote the objectives and purposes of the ordinance than could a profit making organization."

We have concluded that the classification does have a reasonable and substantial relationship to the purpose for which the legislation was designed, and that therefore the decision of the trial court is incorrect.

Where, as here, a legislative classification is attacked on the ground that it is arbitrary and unreasonable, every presumption is in favor of its validity. (*In re Fuller*, 15 Cal.2d 425 [102 P.2d 321].) Furthermore, " 'the legislative classification will not . . . be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason.' " (*In re Herrera*, 23 Cal.2d 206, 212 [143 P.2d 345].)

If a particular legislative classification is founded upon some "constitutional or natural or intrinsic distinction," and the classification bears some substantial relationship to the purpose of the legislation, such classification is valid. (*Werner v. Southern California Associated Newspapers*, 35 Cal.2d 121, 131 [216 P.2d 825, 13 A.L.R.2d 252].)

It can hardly be contended that there is in fact no

distinction between a profitmaking venture and one which is nonprofit in purpose and operation. But according to petitioner and the trial court this distinction ''bears no substantial relationship to the main objective and purpose of the ordinance'' which is the protection of the morals and welfare of teenagers. With this we cannot agree.

■ In order to determine whether such a classification did in fact have a substantial tendency to promote the objective and purpose of the ordinance, it was of course necessary for the legislative body to consider various facts and factual situations for the duty to determine the facts that will justify such class legislation rests in the first instance with the legislative body and the decision of that body in such matters is ordinarily binding on the courts. (*Acton* v. *Henderson,* 150 Cal. App.2d 1, 19 [309 P.2d 481].) ■ Apposite on this point is the declaration of the Supreme Court in *Martin* v. *Superior Court,* 194 Cal. 93, at p. 101 [227 P. 762] :

''It follows that in any given case if the existence of a state of facts of which the court may take judicial notice seems to have been made the basis of a particular piece of legislation and if it may be reasonably said that such facts afford good ground for the making of a particular classification, the legislative enactment will be upheld although the reason therefor does not appear *prima facie* in the law itself.'' (Citations.)

It is quite apparent that the city council when reviewing and evaluating the factual situations surrounding teenage dances, with their attendant opportunities for exploitation and potential exposure to narcotics pushers and purveyors of pornographic material, determined that those who would sponsor and conduct teenage dances should be divorced from the profitseeking motive.

Organizations entitled to permits under the sections of the ordinance here under consideration, such as the Young Men's Christian Association, Boy Scouts of America, the Catholic Youth Organization, the Jewish Big Brothers, and others of similar purpose, are inherently different from those persons and organizations that would seek to make a profit from the youth attending these dances. The former organizations are endeavoring to develop responsible citizens out of the teenagers committed to their care, direction and protection, while the latter are primarily interested in the jingle of the cash register.

*Daniel* v. *Board of Police Comrs.,* 190 Cal.App.2d 566 [12 Cal.Rptr. 226], recognizes the distinction between nonprofit

organizations an'd those engaged in commercial enterprises for profit in matters involving the police power. At page 573 the court stated:

"This section places nonprofit organizations in a different classification from organizations or persons engaged in commercial enterprises for profit. It cannot be said that the section, by reason of such classification, is so arbitrary that it violates the equal protection clause of the federal Constitution or that it violates the state Constitution. *With reference to public morals, there is an extrinsic difference between the classifications.*" (Italics added.)

The difference between the two groups presents itself dramatically when a question arises as to whether a particular service, of potential benefit to the health or morals of the minors, should be provided at the dance. Such a service might be the addition of one or more supervisors, or an additional janitor, or might consist of providing another 'drinking fountain or the addition of more lighting. In such a situation, the basic consideration facing the nonprofit group is whether sufficient funds are available to provide the service, because if the money is available it will undoubtedly be used for the benefit of the minors.

However, when the same situation faces the profitseeking operator, an additional factor must be taken into account. The profit seeker must of necessity weigh the potential benefit to the minors against the additional cost of the service, having in mind, of course, that such additional expense would be coming out of his contemplated profits, and in effect, out of his pocket. The natural tendency, of course, would be to conclude that the service was not really needed and to retain the money as profit. The hearing examiner pointed out in his report that the profit factor in petitioner's proposed operation limits him in his ability or willingness to provide adequate supervision for teenagers as compared with the nonprofit group.[1] It cannot be denied that adequate supervision is a tremendously important factor in properly conducting a teenage dance.

The question of the validity of a legislative classification similar in nature to the one in the instant case, was involved in *In re Weber*, 149 Cal. 392 [86 P. 809]. There the court

---

[1] In his application petitioner stated he intended to have approximately one security guard for each 250 teenage dancers. The examiner states that "A yardstick of one adult supervisor to each 50 teen-age dancers has been set forth by the juvenile authorities as necessary in the conduct of teen-age dances, . . ."

considered a penal law[2] which prohibited the exhibition, use, or employment of any child under the age of 16 for the purpose of singing or playing musical instruments. This law also contained an exception permitting the use or employment of such children as singers or musicians in "any church, school or academy." The petitioner in the *Weber* case contended that this law was discriminatory. The court answered this contention by stating (pp. 395-396):

"It is also stated that the law makes an unfair discrimination by allowing the employment of children as singers or musicians in churches, schools, or academies. The ground of this objection is that such employment, so far as the court can see, may be as injurious to the health or morals or as dangerous to the life or limb of the child as those which are prohibited in the law, and that no prohibition is lawful under the constitution unless it extends to all employments which are equally injurious. In matters of this kind the legislature has large discretion. It must determine the degree of injury to health or morals which the different kinds of employment inflict upon the child, and the corresponding necessity for protecting the child from the effects thereof, and unless its decision in that regard is manifestly unreasonable, there is no ground for judicial interference. We do not think the law in question so unreasonable as to require us to hold it unconstitutional."

Other California legislation, designed for the protection of our youth and containing exceptions in favor of nonprofit organizations and organizations primarily interested in the welfare of minors, is contained in Labor Code sections 1308 and 1394.5.

It is quite apparent that there is a constitutional, natural and intrinsic distinction between profitmaking and nonprofit organizations as sponsors of teenage dances and that this distinction bears a substantial relationship to the main objective and purpose of the ordinance, and that there is a substantial basis for the conclusion that a nonprofit organization can better promote the objectives and purposes of the ordinance than one which is operated for profit. Certainly this is "a question upon which reasonable minds might differ" in which event the propriety of the ordinance is a matter for legislative determination. (*Consolidated Rock Products Co.* v. *City of Los Angeles*, 57 Cal.2d 515, 522 [20 Cal.Rptr. 638,

[2]Penal Code, former section 272, statutes 1905, chapter 568, page 759, repealed 1937.

370 P.2d 342] ; *Doyle* v. *Board of Barber Examiners*, 219 Cal. App.2d 504, 513 [33 Cal.Rptr. 349].)

Petitioner, however, argues in effect that even though those who conduct teenage dances should be subject to strict regulation, they cannot be prohibited from making a profit on such activity. He contends that a regulation which seeks to eliminate the profit motive from those who would sponsor teenage dances constitutes a violation of due process because such regulation would thereby eliminate ''the business'' of sponsoring such activity. He points out that a teenage dance is not inherently evil or harmful to the morals or general welfare of the minors attending such a dance (although concededly it could be if improperly conducted), and therefore he cannot be prohibited from attempting to make a profit from such activity. A similar argument was made and considered in the case of *In re Hixson*, 61 Cal.App. 200 [214 P. 677]. In response to this argument the court stated (pp. 207-208) :

''In *Booth* v. *Illinois* [184 U.S. 425 (22 S.Ct. 425, 46 L.Ed. 623)] the court, having under examination the Illinois statute prohibiting options to buy or sell grain or other commodities at a future time, said : 'The argument then is that the statute directly forbids the citizen from pursuing a calling which in itself involves no element of immorality, and therefore by such prohibition it invades his liberty as guaranteed by the supreme law of the land. Does this conclusion follow from the premise stated ? Is it true that the legislature is without power to forbid or suppress a particular kind of business, where such business properly conducted may not in itself be immoral ? We think not. A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the state thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.''

From the foregoing it is apparent that a good faith determination by the legislative body that ''the business'' of sponsoring teenage dances for a profit is detrimental to the welfare of teenagers, is binding upon the courts if there is

any reasonable basis for such a determination. As we have pointed out, there are numerous factual situations and valid reasons for making such a determination.

As recently as 1963 the Supreme Court of the United States in *Ferguson* v. *Skrupa,* 372 U.S. 726 [83 S.Ct. 1028, 10 L.Ed.2d 93, 95 A.L.R.2d 1347], considered the question of whether a state legislature could prohibit what is essentially a lawful business. This case considered a Kansas statute which made it a misdemeanor for any person to engage ''in the business of debt adjusting'' except as an incident to ''the lawful practice of the law in this state.''

The petitioner who was engaged in that business attacked the validity of the statute upon the ground that such business was a ''useful and desirable'' one, that such a business was not ''inherently immoral or dangerous'' and was in no way contrary to the public welfare and therefore could not be absolutely prohibited. The lower court enjoined enforcement of the statute.

In reversing the judgment the Supreme Court of the United States concluded that ''the Kansas Legislature was free to decide for itself that legislation was needed to deal with the business of debt adjusting. Unquestionably, there are arguments showing that the business of debt adjusting has social utility, but such arguments are properly addressed to the legislature, not to us.''

These cases dispose of this last phase of petitioner's argument.

The judgment is reversed and the peremptory writ of mandate is vacated.

Roth, P. J., and Herndon, J., concurred.