56 Cal.Rptr. 853]

[Civ. No. 30622. Second Dist., Div. One. Dec. 21, 1966.]

TOM ROBINS et al., Plaintiffs and Respondents, v. THE COUNTY OF LOS ANGELES et al., Defendants and Appellants.

(1)

4

Harold W. Kennedy, County Counsel, and Martin E. Weekes, Deputy County Counsel, for Defendants and Appellants.

Kurlander, Shettler & Solomon and Stephen Warren Solomon for Plaintiffs and Respondents.

FOURT, J.—The County of Los Angeles and Sheriff Peter Pitchess (hereinafter called the County) appeal from an order of the superior court enjoining them from the enforcement of section 2017 of the Los Angeles County Ordinance 5860 which requires that any restaurant or bar employing females in "topless" attire shall obtain a license from the county tax collector. We reverse the order, not because we find the licensing requirement per se either an unreasonable exercise of the county's police power or an infringement upon the sovereign powers of the state, but because we consider the action of respondents in seeking such a remedy to be premature.

Complainants, hereinafter referred to collectively as the Robins group because their positions are allegedly similar, operate a number of bars in the unincorporated territory of Los Angeles County where they employ as waitresses females who expose their breasts fully to the view of customers.

Section 1 of License Ordinance section 2017 follows:

"Sec. 2017. *Exhibition of Human Body.* 'Entertainment' also includes the act of any waitress or other female employee, while visible to any customer, exposing any portion of either breast below a straight line so drawn that both nipples and all portions of both breasts which have a different pigmentation than the main portion of the breast is below such straight line, or wearing any type of clothing so that such may be observed."

Section 2 was subsequently passed to amend section 2017 to provide in addition the following controversial paragraph:

· "To a greater and greater extent waitresses in restaurants and other public eating places in the unincorporated territory of the County of Los Angeles have been serving food and drinks with the upper part of their body either entirely unclothed or with one or both of the nipples or that portion of the breast below exposed to the disgust and annoyance of patrons and others in such restaurant or public eating place, and to the annoyance and disgust of the community. By reason thereof this ordinance is urgently required for the immediate preservation of the public peace, health and safety and shall take effect upon the adoption thereof."

These sections are both found as part of Ordinance 5860 entitled "An Ordinance Regulating and Licensing Businesses in the Unincorporated Area of the County of Los Angeles" in Chapter X defining those establishments which shall be subject to dance and entertainment licensing requirements, and setting various modest fees for procuring such licenses.

 We are not at liberty to presume under the circumstances herein present that the subject ordinance will be either interpreted or applied by the County in a manner contrary and detrimental to complainants' constitutional rights. It is clear from the pleadings that no member of the Robins group has ever applied for, or been denied, an appropriate entertainment license, nor has any member either alleged or disclosed facts from which it reasonably may be inferred that the County intends to refuse any member a license, or that the fees imposed therefor are so high as to constitute a business hardship. On the contrary, neither we, nor the County and its agents, may presume from the mere existence of such business activities that criminally prohibited sexual conduct will be encouraged and respondents are equally inhibited from assuming that an application would be futile.

 Complainants have, of course, a right to conduct within the County area, free from governmental interference, any legitimate business for profit. We find no threat of irreparable damage in the enforcement of an ordinance which purports only to charge a license fee for the conduct of such a business and, were the County to impose as an additional condition of granting such a license, compliance with regulations reasonably calculated to control the conduct of such a business with regard to the public welfare and without impinging upon the area of criminal sexual activity preempted by the state's

6

penal statutes, surely this could not be deemed unconstitutional. (Bus. & Prof. Code, § 16100.) Indeed, it is a matter of common knowledge that local governments are constrained to utilize every available source of revenue to support essential services, and the entertainment license would appear to be valid, legitimate and even desirable to finance the expenses of regulating any unanticipated problems in the conduct of establishments offering such entertainment. (*In re Gritton,* 46 Cal.2d 856, 859 [300 P.2d 7].)

■ "[W]hen the right to enact a law depends upon the existence of a fact the passage of the act implies, and the conclusive presumption is, that . . . the legislature . . . performed [its] duty, and ascertained the existence of the fact before enacting or approving the law—a decision which the Courts have no right to question or review.' " (*Galeener* v. *Honeycutt,* 173 Cal. 100, 104 [159 P. 595]; *Smith* v. *Mathews,* 155 Cal. 752, 756 [103 P. 199].)

■ The Alcoholic Beverage Control Board (hereinafter referred to as the Board) has promulgated, pursuant to its authority under Business and Professions Code, section 25750, a regulation prohibiting the use of bare breasted female waitresses to attract business to cocktail bars, saloons, and restaurants which serve alcoholic beverages, and the County asserts that since the respondents fail to comply with the Board's regulation they have no property interest herein protectible. It is well established, however, that the state has preempted the regulation of retail alcoholic beverage sales and placed it within the exclusive jurisdiction of the Board. Since neither the Constitution nor the Alcoholic Beverage Control Act prima facie relates the issuance of a liquor license to cabaret entertainment, respondents' failure to comply with allegedly valid Board regulations is relevent only to the extent that they fail to maintain premises acceptable to the Board, such premises may be closed and the proprietors might have no occasion to exercise entertainment license privileges. "A denial of a liquor licensee's application for a permit to have 'live' entertainment in his liquor establishment would not affect his right under his liquor license to sell liquor." (*Daniel* v. *Board of Police Commissioners,* 190 Cal.App.2d 566, 571 [12 Cal.Rptr. 226].) Conversely, an applicant for an entertainment license might violate Board regulations and yet be legitimately concerned in continuing restaurant service and providing "live" entertainment with or without a liquor license. Moreover, Business and Professions Code, section

24203, provides that the appropriate law enforcement official or legislative body of any city or county may file an accusation with the Board requesting suspension or revocation of any retail license in the event of an existing violation, and it is not within the present province of this court to determine the existence of a violation or the consequences thereof to the case at bar. The County did not raise this issue earlier and the case does not fall within an exception to the rule that it is now prohibited from so doing. (*Damiani* v. *Albert*, 48 Cal.2d 15 [306 P.2d 780]; *Panopulos* v. *Maderis*, 47 Cal.2d 337, 340-341 [303 P.2d 738]; *Gibson Properties Co.* v. *City of Oakland*, 12 Cal.2d 291, 298-299 [83 P.2d 942]; *Tyre* v. *Aetna Life Ins. Co.*, 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725]; *Burdette* v. *Rollefson Construction Co.*, 52 Cal.2d 720, 725-726 [344 P.2d 307]; *Ward* v. *Taggart*, 51 Cal.2d 736, 742 [336 P.2d 534].) Since we reverse on other grounds, we do not herein determine whether respondents have conducted their businesses in such a manner as to forfeit their protection in equity. (*Pon* v. *Wittman*, 147 Cal. 280 [81 P. 984, 2 L.R.A. N.S. 683]; *McQueen* v. *Phelan*, 4 Cal.App. 695 [88 P. 1099]; *Varney & Green* v. *Williams*, 155 Cal. 318, 319 [100 P. 867, 132 Am.St.Rep. 88, 21 L.R.A. N.S. 741].)

However, the mere fact that respondents claim that each is licensed by the Board does not exempt them from the application of the County's entertainment license ordinance, since the denial of one does not affect or prohibit the other. The subject ordinance which purports to regulate entertainment does not attempt to invade the exclusive province of the Board to license and regulate the sale of alcoholic beverages in the state. "[L]ocal and nondiscriminatory fire ordinances, electrical, plumbing and building restrictions, zoning limitations, and the like—[are] municipal regulations which manifestly do not invade the field of regulation envisaged in the state's control of the liquor traffic." (*Ainsworth* v. *Bryant*, 34 Cal.2d 465, 476 [211 P.2d 564].) Since respondents allegedly conduct within the County of Los Angeles lawful businesses, they may be subjected to business license requirements which are reasonably calculated to regulate rather than prohibit the entertainment activity. (Bus. & Prof. Code, § 16100.)

We therefore attach no special significance to section 2 of section 2017, the urgency clause, the terms of which constitute a principal source of controversy. Although we do not

necessarily approve certain language therein, we particularly note that this language may not be utilized by either party as an aid to the construction of the act itself (*Allen* v. *Franchise Tax Board*, 39 Cal.2d 109, 113 [245 P.2d 297]), and that the urgency has in any event been rendered moot since it is long past the 30-day period following July 29, 1965, at which time the ordinance would otherwise have become effective. Moreover, the title of an act may be relied on in ascertaining the intention of the Legislature only where the act itself is ambiguous, but " ' 'cannot be used for the purpose of restraining or controlling any positive provision of the act.' " (*In re Bandmann*, 51 Cal.2d 388, 392 [333 P.2d 339]; *Los Angeles City School Dist.* v. *Odell*, 200 Cal. 637, 641 [254 P. 570].)

As to the bare license requirement of section 2017, we do not find its terms unconstitutional for the reasons herein set forth. (See *Daniel* v. *Board of Police Commissioners, supra,* 190 Cal.App.2d 566.) And we find the speculative motives of the board of supervisors at the time of passing the subject ordinance with amendments immaterial to the question of its validity as a bare regulatory measure since, as we have already observed, we must presume they acted with integrity. (*Brooks* v. *Stewart,* 97 Cal.App.2d 385, 391 [218 P.2d 56].)

The decision in *Spitcauer* v. *County of Los Angeles,* 227 Cal.App.2d 376 [38 Cal.Rptr. 710], does not compel the granting of an injunction in the instant case. The ordinance determined invalid therein purported to be "necessary to control pornography, perversion and prostitution" thus clearly imposing a supplementary proscription in the field of criminal sexual activity. "A local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by the general law." (*In re Lane,* 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897].) The "urgency clause" amending section 2017 of the instant legislation, while somewhat opaque in its construction, does not contain language which discloses on its face an invasion of the state's sacrosanct preserve. Moreover, we find nothing unreasonable per se in the classification of displays of feminine pulchritude as "entertainment."

"As defined by the cases the constitutional phrase 'conflict with general laws' (art. XI, § 11) may arise in several different ways. It may grow out of the exact language of the state and municipal laws [citations] or from a local attempt 'to impose additional requirements in a field that is preempted by

the general law' [citations] or from the state's adoption of 'a general scheme for the regulation of a particular subject' [citations]. But if the state's preemption of the field or subject is not complete, local supplemental legislation is not deemed conflicting to the extent that it covers phases of the subject which have not been covered by state law. [Citations.]'' (*In re Martin*, 221 Cal.App.2d 14, 16-17 [34 Cal.Rptr. 299].) Therefore, if a clear conflict exists, the local ordinance must fail, but we find herein no such overlapping authority.

 Live entertainment has been neither preempted by the state nor subjected to state control and it would not appear an appropriate subject for state control or regulation since it is a matter of peculiarly local concern. The significant issue in determining whether local regulation should be permitted depends upon a ''balancing of two conflicting interests: (1) the needs of local governments to meet the special needs of their communities; and (2) the need for uniform state regulation.'' (50 Cal.L.Rev. (1962) 740, 743.) Although ''[i]t is settled that the enactment by the state of legislation constituting a comprehensive and detailed general plan or scheme with respect to a subject shows, without more, an intent to occupy the field, leaving no room for local regulation, regardless of whether there is an express declaration to that effect by the Legislature'' (*In re Lane*, concurring opinion by Gibson, C. J., 58 Cal.2d 99, 106 [22 Cal.Rptr. 857, 372 P.2d 897]), this statement merely demonstrates evidence presumptive of underlying legislative intent and the real basis for deciding in any case the nature of such intent is whether the demand for uniformity throughout the state outweighs the needs of local governments to handle problems peculiar to their communities.

That basic issue, in turn, may in a specific instance be fragmented into the component issues which combine to effect its resolution such as whether local legislators are more aware of and better able to regulate appropriately the problems of their areas, whether substantial geographic, economic, ecological or other distinctions are persuasive of the need for local control, and whether local needs have been adequately recognized and comprehensively dealt with at the state level. Certain areas of human behavior command statewide uniformity, especially the regulation of statewide commercial activities and the conduct of transient individuals, so that mobility may not be burdened unreasonably. Finally, it

should be considered whether the nature of the subject matter of the local ordinance is such that those affected might reasonably be expected to inquire about existing ordinances in planning their activities. As a general rule it may be said that ordinances affecting the local use of static property might reasonably prevail, while ordinances purporting to proscribe social behavior of individuals should normally be held invalid if state statutes cover the areas of principal concern with reasonable adequacy.

The above analysis is persuasive of local regulation in the instant case and the subject ordinances are readily distinguishable from those earlier held invalid. (*In re Lane, supra,* 58 Cal.2d 99; *In re Martin, supra,* 221 Cal.App.2d 14.) The requirement that a local business obtain a license to enable it to exhibit live entertainment falls outside the scope of such decisions. These are stable businesses with permanent locations situated within a clearly definable local jurisdiction and reasonably subjected to its control. Proprietors of local business establishments may currently be required to conform to local zoning, fire and other municipal regulations; shows, fashion displays, and other types of entertainment may be required to obtain a license. (Bus. & Prof. Code, § 16100; *Daniel* v. *Board of Police Commissioners, supra,* 190 Cal. App.2d 566, 570-571.) ▮▮▮ It may not be presumed that by the imposition of a license on the display of bare breasted females the County intends to prohibit the activity or penalize it as criminally sexual conduct.

We are, moreover, not convinced, in accord with the reasoning hereinabove expressed, that criminal sexual activity associated with the public display of the naked human body has been preempted by state law. Penal Code, section 650½ has recently been held to be unconstitutionally vague so that a woman who exposes her breasts in a public fashion show commits no crime thereunder. (Pen. Code, §§ 314 (lewd or obscene conduct), 415 (disturbing the peace) and 647 (vagrancy).) Sections 314 and 647 require a willful intent to encourage or commit acts of lewd or obscene public exposure and we must assume them prima facie inapplicable to bare breasted waitresses, while section 415 is inapplicable unless we can assume that passive and innocent exposure may incite the customers to such conduct, which has not been demon- ▮▮▮ ▮▮▮ Thus, we are constrained to the view that the display of the bare female bosom, whether defined as "entertainment" or not, does not violate state law, is not regulated

by the state, and does not constitute criminal sexual activity in the area definitively preempted by the state. (*In re Lane, supra,* 58 Cal.2d 99.) Yet we observe that full exposure of the naked female breast is not socially commonplace and, until it becomes so accepted, the reasonable regulation of public premises where the advertised ritual of breast exposure is observed appears appropriate insofar as it does not presume dubious morality. The state not having completely preempted this field, it follows that local supplemental legislation which is not conflicting because it covers phases of the subject not covered by state law is justified. (*In re Martin, supra,* 221 Cal.App.2d 14.)

We cannot accept respondents' theory that the subject ordinance is unconstitutional because it might be construed as a prior restraint or denial of freedom of expression; nor is the subject matter which the County thus attempts to regulate privileged by any other regulatory immunity. Free speech is not impaired when such a highly protected medium of information dissemination as a radio station is denied a license and its operations interrupted for its failure to observe regulations promulgated in the public interest. (*National Broadcasting Co.* v. *United States,* 319 U.S. 190, 227 [87 L.Ed. 1344, 63 S.Ct. 997].)

We find herein no interference with free speech or freedom of expression since it is the commercial aspects of a business enterprise with which we are herein concerned. (*Ginzburg* v. *United States,* 383 U.S. 463 [16 L.Ed.2d 31, 86 S.Ct. 942]; *Mishkin* v. *New York,* 383 U.S. 502 [16 L.Ed.2d 56, 86 S.Ct. 958].) Free speech may be protectible even where it is published in a paid advertisement (*New York Times Co.* v. *Sullivan,* 376 U.S. 254, 266 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412]), but not where the content of the expression is directly related to a commercial activity. (*Valentine* v. *Chrestensen,* 316 U.S. 52, 54 [86 L.Ed. 1262, 62 S.Ct. 920]; *Murdock* v. *Pennsylvania,* 319 U.S. 105, 110-111 [87 L.Ed. 1292, 63 S.Ct. 870, 146 A.L.R. 81]; *Ginzburg* v. *United States, supra; Mishkin* v. *New York, supra.*) The instant ordinance requires only initial approval of the license application and the license once issued may not then be revoked without cause.

The instant ordinance is not objectionable on the grounds that it appears from its face that it is unreasonable, oppressive, or prohibitory in nature. (*In re Hall,* 50 Cal.App.

786 [195 P. 975]; *Roe* v. *Commonwealth* (Ky.App. 1966) 405 S.W.2d 25.[1])

The County may not apply its ordinance in a prohibitive manner on the presumption that the display of bare breasts will be conducted in a manner calculated to deliberately emphasize sexual provocation. In the absence of contrary evidence, it must be assumed that such publication will be addressed only to those who freely and voluntarily elect the so-called pleasure and will not be imposed upon those whose sense of propriety might be injured or their annoyance or disgust be aroused, since they are equally free to avoid exposure. (*Ginzburg* v. *United States, supra,* 383 U.S. 463; *Kirby* v. *Municipal Court,* 237 Cal.App.2d 335 [46 Cal.Rptr. 844].)

We are persuaded that the respondents in the instant case have prematurely sought injunctive protection from the courts. While we do not necessarily condone herein the conceded penal sanctions of the ordinance, we may not speculate that respondents would deliberately challenge the County's authority to invoke these remedies hereafter, nor that the County would seek to impose a penalty which it has been advised would be inappropriate in its application hence unconstitutional. Ordinance No. 5860, moreover, establishes not only the basis upon which business license tax regulations are imposed, but a comprehensive and carefully considered procedure for making application (Article 3), notice of grounds for denial or issuing conditional licenses (Article 7), hearings before the Public Welfare Commission (Article 9), and hearings on appeal to the License Appeals Board (Article 9.5). Respondents have failed to take any steps to avail themselves of the ample remedies thus supplied and cannot be heard to complain.

". . . One who is required to take out a license will not be heard to complain, in advance of application, that there is danger of refusal. [Citations.] He should apply and see what happens." (*Highland Farms Dairy* v. *Agnew,* 300 U.S. 608, 616-617 [81 L.Ed. 835, 57 S.Ct. 549].) The California courts have suggested that, where a permit is wrongfully denied, the

---

[1] "A consideration of the entire legislation pertaining to nudist societies conclusively shows that the regulatory provisions set out therein are so unreasonable as to be prohibitive. The fact that a person seeking to own or operate a nudist society must pay a $1,000 license tax each year and build a 20-foot brick, stone or cement wall around the entire premises, effectively precludes the existence of a nudist society altogether." (*Roe* v. *Commonwealth, supra,* p. 28.)

remedy is not injunction but "[t]he remedy would seem to be in compelling the granting of a permit in a proper case. . . . The wrong consists in refusing it to the plaintiff when it ought to be granted, and under such circumstances as it is freely granted to the favored . . ." (*Mutual Elec. Light Co. v. Ashworth,* 118 Cal. 1, 6 [50 P. 10]; *Moore* v. *Superior Court,* 6 Cal.2d 421, 423 [57 P.2d 1314].) It appears that the constitutionality of the instant ordinance would properly receive its initial challenge at the administrative level. (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]; *United States* v. *Superior Court,* 19 Cal.2d 189, 194 [120 P.2d 26].) Since "even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of. the administrative remedy has been held to be a prerequisite to equitable relief.' " (*Dunham* v. *City of Westminster,* 202 Cal.App.2d 245, 249 [20 Cal.Rptr. 772]; *United States* v. *Superior Court, supra,* 19 Cal.2d 189, 195.)

The order is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 5, 1967, and respondents' petition for a hearing by the Supreme Court was denied February 15, 1967.