56 Cal.Rptr. 620]

## Appellate Department, Superior Court, Los Angeles

[Crim. Nos. 7217, 7218, 7219, 7220. Jan. 4, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. ELIZABETH ANN KUKKANEN et al., Defendants and Respondents.

( 899 )

Roger Arnebergh, City Attorney, Philip E. Gray, Assistant City Attorney, and Richard G. Kolostian, Deputy City Attorney, for Plaintiff and Appellant.

Norman Schwartz for Defendants and Respondents.

WHYTE, J.—Four cases are combined for consideration as a single appeal. All involve arrests for violations of section 103.102 of the Los Angeles Municipal Code which reads in relevant part: "No person shall operate, conduct, or manage any public place where food or beverages are sold, offered for sale or given away, and where any form of live entertainment is provided or furnished without a written permit from the Board [of Police Commissioners]. The presence of any waitress, hostess or other female attendant in such public place, . . . unclothed or in such attire, costume or clothing as to expose to public view any portion of either breast at or below the areola thereof, . . . is included in the term live entertainment as used in the preceding sentence."[1]

Each case involves the presence of a "topless" waitress at a place where food or beverages are sold and which did not have a "live entertainment" license. On September 30, 1966,

[1]The provisions governing the applications for and issuance of permits are found in §§ 103.00-103.41 of the Municipal Code. The grounds for

the cases were called for trial and it was stipulated that in each case the arrest report be received in evidence and that the witnesses named therein be deemed to have been called, sworn and testified as set forth in said reports. Thereupon, each defendant moved to dismiss on the ground that "the ordinance is unconstitutional as pre-empted by State law." The cases were then continued to October 7, 1966, at which time trial briefs were filed. Each defendant's motion to dismiss was renewed. The motions were granted. Each action was dismissed and the bail theretofore posted exonerated.

denial or refusal of a permit are found in § 103.31 which reads as follows:

"Sec. 103.31. DENIAL OF PERMIT OR REFUSAL TO RENEW:

(a) Ground for Denial—Prohibited by Law. The Board shall not issue or renew a permit for a business prohibited by any local or state law, statute, rule or regulation, or prohibited in the particular location by the provisions of Chapter 1 of this Code.

(b) Ground for Denial—Nuisance. The Board shall not issue or renew a permit for a business which has been or is a public nuisance.

(c) Further Grounds for Denial. The Board may deny a permit or a renewal thereof on any of the following grounds:

1. The applicant is unfit to be trusted with the privileges granted by such permit, or has a bad moral character, intemperate habits or a bad reputation for truth, honesty, or integrity; or

2. The applicant is a person under the age of 18 years; or

3. The applicant, his agent or employee, or any person connected or associated with the applicant as partner, director, officer, stockholder, associate, or manager has committed or aided or abetted in the commission of any act or act of omission which, if committed by a permittee would be a ground for disciplinary action under this Article; or

4. The applicant, his agent or employee, or any person connected or associated with the applicant as partner, director, officer, stockholder, associate or manager has been refused a permit or had a permit revoked or has been an officer, director, member, partner, or manager of any person who has been refused a permit or had permit revoked by the Board."

The grounds for disciplinary action are set forth in § 103.35 as follows:

"Sec. 103.35. DISCIPLINARY ACTION—GROUNDS:

It shall be a ground for disciplinary action if any permittee, his agent or employee or any person connected or associated with the permittee as partner, director, officer, stockholder, general manager or person who is exercising managerial authority of or on behalf of the permittee has:

(a) Knowingly made any false, misleading or fraudulent statement of a material fact in an application for a permit, or in any report or record required to be filed with the Board; or

(b) Violated any provision of this Article or of any statute relating to his permitted activity; or

(c) Been convicted of a felony or any crime involving theft, embezzlement or moral turpitude; or

(d) Committed any act constituting dishonesty or fraud; or

(e) A bad moral character, intemperate habits or a bad reputation for truth, honesty or integrity; or

(f) Committed any unlawful, false, fraudulent deception or dangerous act while conducting a permitted business; or

(g) Published, uttered or disseminated any false, deceptive or mislead-

The People have appealed.

Appellant contends the ordinance involves only the licensing of the legitimate business of conducting a place where food and beverages are sold which offers live entertainment together with the proper incidental imposing of reasonable regulations upon those who may become licensees and upon the conduct of such business. [See *People* v. *Jordan* (1966) Cr.A. 6645.*]

The respondents contend that the ordinance, while veiled as a licensing act, is in fact a regulation of sexual activity which field has been preempted by the state Legislature to the exclusion of any action by a municipal corporation.

The question thus posed is a simple one, the answer not so simple.

If the ordinance is merely the licensing of "live entertainment" that field is not preempted. (Bus. & Prof. Code, § 16000.) Municipal Code section 103.102 as it stood before the 1966 amendments has already been tested and found constitutionally valid. *Daniel* v. *Board of Police Commissioners* (1961) 190 Cal.App.2d 566 [12 Cal.Rptr. 226]; *People* v. *LeDoux* (1966) Cr.A. 7093.*

On the other hand if the ordinance as amended in 1966 involves "regulation of the criminal aspect of sexual activity" then the field is preempted[2] (*In re Lane* (1962) 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897]; *In re Moss* (1962) 58 Cal.2d 117 [23 Cal.Rptr. 361, 373 P.2d 425]; *Whitney* v.

---

ing statements or advertisements in connection with the operation of a permitted business; or

(h) Violated any rule or regulation adopted by the Board relating to the permittee's business; or

(i) Wilfully failed to comply with the terms of any contract made as a part of the exercise of the permitted business; or

(j) Conducted the permitted business in a manner contrary to the peace, health, safety, and general welfare of the public; or

(k) Demonstrated that he is unfit to be trusted with the privilege granted by such permit.''

*Nonpublished appellate department opinion.

[2]In this field there has been no legislative declaration of the state's intent to occupy the field but the regulations ''are so extensive in their scope that they already show an intention by the Legislature to adopt a general scheme for the regulation of this subject.'' In this scheme Penal Code, section 650½ which was a blanket catch-all designed to cover any conceivable (and not otherwise forbidden) activity which ''outrages public decency'' played a large role. It has been suggested that since 650½ was declared unconstitutional in *In re Davis* (1966) 242 Cal.App. 2d 645 [51 Cal.Rptr. 702], the state may no longer fully occupy the field and that the question of preemption should be reexamined. However, such a reexamination is not necessary to the determination of this case. (See *Robins* v. *County of Los Angeles* (1966) *ante,* p. 1 [56 Cal.Rptr. 853], for further discussion of this preemption problem.)

*Municipal Court* (1962) 58 Cal.2d 907 [27 Cal.Rptr. 16, 377 P.2d 80]; *People* v. *Hansen* (1966) 245 Cal.App.2d 689 [54 Cal.Rptr. 311]; *Spitcauer* v. *County of Los Angeles* (1964) 227 Cal.App.2d 376 [38 Cal.Rptr. 710]) and the ordinance therefore would be invalid (*Agnew* v. *City of Los Angeles* (1958) 51 Cal.2d 1 [330 P.2d 385]; *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; *In re Martin* (1963) 221 Cal.App.2d 14 [34 Cal.Rptr. 299]).

Respondent contends that the ordinance is not one licensing "live entertainment" because the conduct covered by the 1966 amendment is not entertainment and cannot be brought within the definition of that term.

 Entertainment has been variously and broadly defined. Among other definitions are: "That which engages the attention agreeably, amuses or diverts" (Webster's New International Dictionary, 2d ed.) "That which serves as amusement" (Black's Law Dictionary.) "A source or means of amusement" (*People* v. *Klaw* (1907) 65 Misc. 72 [106 N.Y.S. 341 at 351.]) " 'Entertainment' denotes that which serves for amusement, and 'amusement' is defined as a pleasurable occupation of the senses, or that which furnishes it. . . ." (*Young* v. *Board of Trustees* (1931) 90 Mont. 576 [4 P.2d 725].)

 Where a word has clear meaning the Legislature cannot change it, but where the meaning is ambiguous then the legislative declaration as to what was intended by such word is entitled to great weight. (*California Employment Stabilization Com.* v. *Payne* (1947) 31 Cal.2d 210 [187 P.2d 702].)

 In the light of the foregoing definitions we cannot say that the city council went beyond the permissible limits in defining the activities here involved as entertainment. This being so we must accept the legislative declaration that it was the council's intent to include the presence of "topless" waitresses within the activities which constitute live entertainment and hence require a license. It is interesting to note that it was the opinion of the defendants Kukkanen and Kruse that customers were attracted by "topless." If a substantial number of customers came not because of the food or drink offered they must have come because of the amusement or diversion (i.e., entertainment) they experienced from the display of the female breast. (*Robins* v. *County of Los Angeles* (1966) *ante,* p. 1 [56 Cal.Rptr. 853].)

Admittedly no defendant had a license for a place where

live entertainment was provided or furnished. The cases therefore can be affirmed only if the ordinance is unconstitutional as a regulation of the criminal aspects of sex.

■ We approach this problem bearing in mind that every intendment is in favor of constitutionality. (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* ■(Cal.App.) 55 Cal.Rptr. 642 [published Metropolitan News, December 27, 1966].) We are examining the act of a coordinate branch of the government. Courts have nothing to do with the wisdom of the regulation. The city's legislative power must be upheld unless it manifestly infringes on constitutional guaranties. The duty to uphold the legislative power is as much the duty of appellate courts as it is of trial courts. The only function of the court is to determine whether the exercise of legislative power has exceeded constitutional limitations. (*Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990].)

■ The city ordinances involved in *Lane, Moss, Whitney, Hansen* and *Spitcauer,* supra, all contained prohibitions of certain activities. In *People* v. *Jordan, supra,* Cr.A. 6645, the legislation purported to be a licensing ordinance. That ordinance was held invalid because read as a whole the purport of the provisions of the ordinance was "unmistakably the regulation of the lewd or non-legitimate aspects" of a figure studio. *Robins, supra,* decided since this case was argued, also involved a licensing ordinance.

By contrast no prohibitions are found in Ordinance 132,174 which adopted the 1966 amendment to section 103.102. The same regulations for granting or denying licenses and for disciplinary action are in the licensing ordinance as were there before Ordinance 132,174 was introduced. Most of these were in the ordinance when *Daniel* v. *Board of Police Commissioners, supra,* was decided. Not one of the grounds for disciplinary action mentions any sexual act or suggestive conduct.

It is not to be forgotten that the field mentioned in *Lane* and the cases following *Lane* is that of the "regulation of the criminal aspect of sexual activity." Neither nudity nor sex is obscene per se and under all circumstances (*Parmelee* v. *United States* (1940) 72 App.D.C. 203 [113 F.2d 729]). Nudity is not prohibited by this ordinance, although its use as entertainment requires a license. Any prosecution for obscene

nudity would have to be under some other valid regulation.[3] This licensing ordinance no more controls nonobscene nudity than did the same ordinance control the sale of intoxicating liquor (*Daniel*) or did a licensing ordinance for lawyers unlawfully regulate the practice of law (*In re Galusha* (1921) 184 Cal. 697 [195 P. 406]).

This case does not involve the application for or denial of a permit. Should the board act arbitrarily in considering an application under the provisions of the ordinance providing for the licensing of nonlewd nudity as live entertainment the remedy would be by mandamus to control such arbitrary action, not by striking down an otherwise valid ordinance. (*Robins* v. *County of Los Angeles, supra.*) Some of the reasons for licensing of legitimate businesses of this kind are set forth in *Phillips* v. *Board of Police Commissioners* (1966) 240 Cal.App.2d 410 [49 Cal.Rptr. 490].[4]

This leaves only one question: can the ordinance apply to the waitress Kukkanen? There has been no determination of facts in any of the four cases. Whether Kukkanen is not subject to the ordinance because she is not a person who operated, conducted or managed the place in question or whether she is subject to prosecution either as the person who was in fact operating or managing the cafe at the particular time or as one who aided and abetted (Pen. Code, § 31) the actual operator or manager must be determined on the merits of the prosecution. Her nonliability should not be prejudged by dismissal of the prosecution.

The judgments of dismissal are reversed and the causes remanded for determination on the merits.

Aiso, P. J., concurred.

---

[3] This is illustrated in the cases at bench. At the location known as The Wheel no lewd or obscene act was performed by the waitress Elizabeth Ann Kukkanen and she was booked only for lack of an entertainment license. At the location known as Three Little Pigs the officers observed what they considered a lewd act (the lifting of her breast into the beer she was serving) on the part of the waitress Delores Tenuta. She was not arrested under this licensing act but was booked under state law, to-wit, Penal Code, section 647 subdivision (a) (lewd conduct).

[4] *Phillips* upheld a much stricter licensing ordinance containing certain complete prohibitions. It points up some of the police problems that may arise because of certain types who might be attracted to make improper use of even a properly run establishment offering this type of entertainment. It is certainly proper for the city to impose a reasonable license fee of sufficient amount to assist with the cost of offering more adequate police protection.